PETER J. KINEEN *vs.* BOARD OF HEALTH OF LEXINGTON.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

INHABITANTS OF LEXINGTON *vs.* IRVING JOHNSON.

Middlesex.    March 21, 1913 — May 23, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Board of Health*, Municipal. *Nuisance. Manure. Equity Jurisdiction*, To enforce regulation of board of health.

The board of health of a town, where market gardening was extensively carried on and required the use of large quantities of stable manure, made an order or regulation that manure brought into the town by a certain railroad should be unloaded at a certain freight yard and should be unloaded there within seventy-two hours, and that no car load of manure should remain on any track or siding of the railroad, except at the freight yard designated, for more than twelve

hours. A market gardener, on whom a copy of this order was served, filed under
R. L. c. 75, § 95, a petition for a trial by jury in the Superior Court. The
vote by which the order or regulation was passed contained a recital that in
the opinion of the board of health "manure is an article capable of containing
or conveying infection or contagion or of creating sickness and is attended
with noisome and injurious odors." *Held*, that the regulation was one made
by the board of health under R. L. c. 75, § 65, from which the statute pro-
vided no appeal, and not under § 91 of that chapter, so that the petition to
the Superior Court for a jury should be dismissed.

A regulation made under R. L. c. 75, § 65, by the board of health of a town, where
market gardening is extensively carried on and requires the use of large quanti-
ties of stable manure, that manure brought into the town by a certain railroad
shall be unloaded at a certain freight yard and shall be unloaded there within
seventy-two hours, and that no car load of manure shall remain on any track
or siding of the railroad except in the freight yard designated for more than
twelve hours, is not unreasonable as against a market gardener in the town who
uses large quantities of manure, which it is more inconvenient and expensive
for him to unload from the cars at the places designated than it was for him to
unload at the places used by him for that purpose before the regulation was
passed; and the town may maintain a suit in equity against him to enforce the
regulation, although to the extent stated it interferes with his business. In
the present case it was not necessary for the court to consider whether the
regulation would apply to manure left standing in cars on a siding on the
consignee's own land.

MORTON, J.   The petitioner in the first four cases is a market
gardener engaged in the business of market gardening in the
town of Lexington.  It appears that the business of market gar-
dening is extensively carried on in that town and that large
quantities of stable manure are shipped in car load lots over the
Boston and Maine Railroad into the town for agricultural pur-
poses.   The board of health of the town adopted certain orders
or regulations requiring manure brought into the town by rail-
road to be unloaded at East Lexington and to be so unloaded
within seventy-two hours after the consignees had received notice
of its arrival, and providing that no car load of manure should
remain or stand on any track or siding of the Boston and Maine
Railroad, except at East Lexington, for more than twelve hours.
These orders or regulations were duly published and copies were
duly served upon the petitioner.   The petitioner took what was
in substance and effect an appeal to the Superior Court, con-
tending that the orders or regulations came under R. L. c. 75,
§ 91, and that he was entitled to a jury trial.   The board of health
contended that they came under § 65, and moved that the pe-
titions be dismissed and also demurred to them.   The demur-

rers were sustained and the motions to dismiss were allowed, and decrees were entered dismissing the petitions with costs.*    The petitioner appealed to this court.

The other case is a bill in equity by the board of health under R. L. c. 75, § 141, to restrain the defendant Johnson, who also is a market gardener in Lexington, from violating said orders and regulations.    Johnson admits that he has been duly served with copies of said orders and regulations and that he has violated them.    And he has notified the board of health that he intends to unload manure at Lexington Centre and North Lexington unless restrained by due process of law from so doing.    The case is here upon a reservation by a single justice † on the bill and answers, such decree to be entered as justice and equity may require.

---

* By order of *Pratt*, J.   The orders or regulations of the board of health referred to were as follows:

On July 8, 1912, the board of health passed the following vote: "Ordered that on and after July 15 all manure arriving in this town by railroad shall before being unloaded, be unloaded and transported under the supervision of the Board of Health of the Town of Lexington and in a manner and in a place satisfactory to the Board because the manure is capable of containing or conveying infection or contagion or of creating sickness and is attended with noisome and injurious odors."

On July 15, 1912, the board of health passed the following vote: "Ordered that on and after this date all manure arriving in this town by railroad shall until further order of the Board of Health of the Town of Lexington be unloaded from the cars at the freight-yard at East Lexington."

The record of a meeting of the board of health held on August 14, 1912, contained the following:

"The matter of bringing manure into town by railroad and unloading it was discussed and the Board, being of the opinion that manure is an article capable of containing or conveying infection or contagion or of creating sickness and is attended with noisome and injurious odors, and that regulations relative thereto should be made, it was unanimously voted that the regulations or orders of this board on July 15, 1912, shall be enforced.

"And it was unanimously voted that on and after August 19, 1912, all manure arriving in town by railroad shall be unloaded at the freight yard at East Lexington, and shall be unloaded within seventy-two hours after the consignee thereof has received notice of its arrival.

"And it was unanimously voted that on and after August 19, 1912, no car load of manure shall stand or remain on any track or siding of the Boston & Maine Railroad except at East Lexington, for more than twelve hours."

† *De Courcy*, J.

The bill in equity and the other cases were all argued together, and we proceed to consider them together.

The question in the first four cases is, as already in effect stated, whether the orders and regulations come under c. 75, § 65, or § 91 of the same chapter. It is only in case the regulations come under § 91 that a petition to the Superior Court will lie and a jury trial can be had.

So much of § 65 as is material is as follows: "The board of health shall examine into all nuisances, sources of filth and causes of sickness within its town . . . which may in its opinion be injurious to the public health, . . . and shall make regulations for the public health and safety relative thereto and relative to articles which are capable of containing or conveying infection or contagion or of creating sickness which are brought into or conveyed from its town. . . ." Section 91, or so much thereof as is now applicable, is as follows: "The board of health of a city or town shall from time to time assign certain places for the exercise of any trade or employment which is a nuisance or hurtful to the inhabitants, injurious to their estates, dangerous to the public health or is attended by noisome and injurious odors, and may prohibit the exercise thereof within the limits of the city or town or in places not so assigned."

We think that it is plain that the regulations come under § 65 and not under § 91. The regulations do not deal with the assignment of a place or places for the exercise of a trade or employment which is a nuisance, but with the bringing into the town of an article, namely manure, which is deemed capable of containing or conveying infection or contagion or of creating sickness. The fact that a place is assigned for unloading it does not show that the action of the board of health is to be referred to § 91 rather than to § 65. That feature of the regulations relates directly to and is connected with the bringing of manure into the town, not to the assignment of a place for the exercise of a trade or employment that is a nuisance or dangerous to the public health. Neither does the fact that the manure is described as "attended by noisome and injurious odors," which are words taken from § 91, show that the subject of the regulations is one coming within the scope of that section. There is nothing to prevent the board of health from describing an article as "attended with noisome

and injurious odors" in addition to finding that it is capable of creating sickness and conveying contagion or infection. It is the substance of the matter dealt with by the board of health that is to be regarded rather than forms and words, except so far as those may tend to throw light upon or to explain the real purpose of the board of health. It follows from what we have said that the petitions in the first four cases were rightly dismissed.

With regard to the bill in equity the case stands differently. The board of health is seeking thereby to enforce its rules and regulations. It thus puts in issue at the election of the defendant their validity and reasonableness, and if the defendant in any given case chooses to accept the issue thus tendered, as he has done in this case, he has an undoubted right to do so and to have the matter determined by the court. We see no ground on which it can be held that the regulations are, as the defendant contends, void and of no effect. They relate to matters into which it is made the duty of the board of health to inquire and concerning which it is expressly authorized to make regulations. Whether manure, particularly stable manure, is capable of containing or conveying infection or contagion or of creating sickness is for the board of health to determine subject only to such considerations as may arise in an inquiry in proceedings where the question is properly raised into the reasonableness of the regulations that have been adopted. We do not see how it can be said as matter of law on the facts before us that the regulations are unreasonable. The case is before us, as has been said, on bill and answer. All that is alleged in the answer is that the defendant conducts the business of a market gardener in Lexington in which he raises vegetables of various kinds for the Boston market; that it is necessary in his business for him to use and that he uses large quantities of manure of various kinds, including stable manure, and that for many years previous to the adoption of the orders and regulations in question he has received stable manure in car load lots over the Boston and Maine Railroad, which has been delivered at its siding in Lexington and North Lexington. The substance of this is, if we understand it aright, that it will be more inconvenient and expensive for him to unload manure at East Lexington than it was at the places where he has unloaded it heretofore, and that his business will be interfered with to that

extent. But all property and business are subject to such reasonable restraint and regulation as, within constitutional limits, the Legislature may deem necessary and expedient for the public health and safety. *Commonwealth* v. *Alger,* 7 Cush. 53. *Salem* v. *Eastern Railroad,* 98 Mass. 431. *Train* v. *Boston Disinfecting Co.* 144 Mass. 523. And there can be no question that the regulations in question are such as it is within the constitutional power of the Legislature by a general authority to empower local boards of health to make if they are found to be reasonable and just. It is conceded that so much of the regulations as requires that manure shall be unloaded within seventy-two hours after the consignee has received notice of its arrival is not unreasonable. If, taking all of the circumstances into account, the board of health think that the unloading of manure brought into the town by railroad should be done at East Lexington and that no car load of manure should stand or remain on a track or siding of the Boston and Maine Railroad, except at East Lexington, for more than twelve hours, we cannot say on the facts before us that such regulations are not just and reasonable. The subject matter to which they relate is certainly within their jurisdiction, and we are bound to assume in the absence of anything to the contrary that the regulations were made in the *bona fide* discharge of their duties as public officers. Presumably the great bulk of the manure that is brought into the town is brought by railroad, and the regulations adopted may well be confined to manure so transported. Whether the regulations would apply to manure brought into the town by railroad and left standing in cars on a siding on the consignee's own land it is not necessary to consider. It follows that in the bill in equity the plaintiff is entitled to the relief prayed for.

*Decree dismissing the petitions in the first four cases affirmed with costs of this appeal. Decree to be entered by a single justice in favor of the plaintiff in the bill in equity, with costs.*

*P. A. Hendrick,* (*J. F. Cavanagh* with him,) for the petitioner in the first four cases, and for the defendant in the fifth case.

*W. M. Prest,* for the respondent in the first four cases, and for the plaintiff in the fifth case.