BEAMAN-MARVELL COMPANY *vs.* GEORGE A. GUNN, JUNIOR, & another.

Franklin.   June 26, 1940. — June 28, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Evidence*, Competency, Extrinsic affecting writing.

Evidence was admissible to show that a purported contract in writing was not intended to supersede or change an oral contract previously made between the parties and already largely performed, but was executed merely for the purpose of enabling one of the parties to obtain a loan at a bank.

BILL IN EQUITY, filed in the Superior Court on March 2, 1938.

Decrees were entered by order of *Burns*, J.

The case was submitted on briefs.

*C. V. D. Siegel*, for the plaintiff.

*W. A. Davenport*, for the defendant Gunn.

RONAN, J.   This is a bill for an accounting in which the plaintiff alleges that the defendant Gunn hereinafter referred to as the defendant, is indebted to it in the sum of $2,327.68, and that Gunn threatens to bring suit against the plaintiff for the purpose of harassing the plaintiff with vexatious claims that are without merit.   The defendant answered denying the material allegations of the bill and alleging that the plaintiff owed him for lumber sold and delivered to it.   The case was referred to a master, whose report was confirmed as modified by the sustaining of certain exceptions of the defendant.   The plaintiff appealed from the interlocutory decree confirming the report, and from the final decree establishing an indebtedness due to the defendant and dismissing the bill against the defendant bank.

The plaintiff is engaged in the manufacture of wooden boxes, and the defendant Gunn, is a lumber dealer.   In the early spring of 1936 the plaintiff and the defendant

entered into an oral agreement, by which the defendant agreed to sell all the merchantable white pine plank of a certain thickness to be cut from the Chesterfield lot, so called, for $15 per thousand feet, and the plaintiff agreed to buy these planks at the said price. It was also agreed that the plaintiff would advance weekly to the defendant the sums necessary to enable the defendant to continue cutting the lumber on this lot. The parties are in dispute as to the amount of lumber that was cut and delivered by the defendant, and whether the defendant should be charged for the insurance on the lumber and interest paid by the plaintiff on money borrowed for the purpose of making weekly advancements to the defendant.

The master finds that the sawing operations took place on three locations or settings on the wood lot; that from the first setting two hundred seventy-six thousand seven hundred sixty feet were sawed by the defendant and delivered to the plaintiff's factory; that four hundred fifty-two thousand four hundred forty-one feet were sawed from the second setting and one hundred ninety-six thousand eight hundred eighty-three from the third setting; and that the planks from the second and third settings were piled to dry and season in a pasture that the plaintiff had rented for the purpose or in the plaintiff's yard. The total number of feet of plank furnished by the defendant was nine hundred twenty-six thousand eighty-four, which at $15 a thousand would amount to $13,891.26. The plaintiff advanced $12,400.27 to the defendant. The amount of the plaintiff's indebtedness was established in the final decree as $1,490.99, which the plaintiff was ordered to pay with interest from the date of the filing of the bill, together with costs.

But the master found that a considerable quantity of the planks from the second setting and some from the third setting were affected by red rot which makes the lumber unfit for the manufacture of boxes. He allowed the plaintiff five per cent of the second and third settings on account of red rot. These two settings comprised six hundred forty-nine thousand three hundred twenty-four feet

of lumber. After the hearings before the master began, the defendant under an agreement with the plaintiff withdrew four thousand seven hundred fifty-six feet from a lot comprising twenty-four thousand one hundred ten feet, which came from the second or third setting. The net amount of lumber received by the plaintiff from these two settings, therefore, amounts to six hundred forty-four thousand five hundred sixty-eight feet and after deducting five per cent for red rot it is chargeable with six hundred twelve thousand three hundred forty feet. Adding this last figure to the two hundred seventy-six thousand seven hundred sixty feet received by the plaintiff from the first setting, the total amount of lumber for which the plaintiff is chargeable is eight hundred eighty-nine thousand one hundred feet. The price at $15 per thousand feet totals $13,336.50, and after the sum of $12,400.27 paid by the plaintiff is deducted a balance due the defendant is left amounting to $936.23 for lumber sold to it by the defendant.

The remaining question is whether the defendant is to be charged for the cost of insurance paid by the plaintiff, and for interest on money borrowed by the plaintiff for the purpose of making weekly payments to the defendant so as to enable him to continue sawing operations upon the wood lot. Under the oral agreement made in the spring of 1936, the plaintiff agreed to furnish the financing necessary for the cutting of the lumber. Operations began in May, 1936, and ended in December, 1936. At the end of each week the defendant presented a slip showing the amount of lumber sawed and received a check from the plaintiff to pay for the operations. In September, 1936, it became necessary for the plaintiff to borrow money for the operation of the wood lot, and the plaintiff and the defendant jointly gave a mortgage to the bank to secure a loan to the plaintiff. Three other mortgages were subsequently given by them for this purpose. The plaintiff alone signed the notes. Before the bank gave the first loan the plaintiff and defendant executed a contract for the purchase and sale of the lumber. The master found that this written contract "did not embody the full agreement of the par-

ties, but was executed merely for the purpose of satisfying the bank in connection with the granting of the loan." This written agreement provided for the purchase by the plaintiff and the sale by the defendant of about eight hundred thousand feet of white pine plank on the Chesterfield lot at $15 per thousand feet, payable on the fifteenth of the month following delivery. No mention was made of either insurance or interest. This agreement did not require the plaintiff to make any advance payments, which, in fact, it continued to make weekly to the defendant after this written agreement was made. In June, 1937, the plaintiff furnished a statement to the defendant showing the lumber used and the payments made by the plaintiff. This statement contained no items covering insurance or interest. In his supplemental report the master found that, in the spring of 1936, the parties orally agreed that the plaintiff would furnish all financing required by the sawing operations on the lot, and this was the reason the defendant sold the lumber at $15 per thousand feet instead of at a higher price. The master refused to charge the defendant with the cost of insurance and for interest paid by the plaintiff on loans secured at the bank.

The plaintiff contends that under the written contract of September, 1936, the plaintiff was entitled to receive the lumber at the contract price, and to require it to pay the insurance and interest would compel it to pay more than the contract price. It contends that the master erred in not charging the insurance and interest to the defendant. It is plain from the master's report that this written contract was not intended by the parties to modify in any respect the oral agreement made in the spring of 1936, and that the sole purpose in executing the written contract was to satisfy the bank in order to obtain a loan secured by a mortgage on the lumber. There was no error in admitting evidence to show the circumstances attending the execution of this contract and the purpose of the parties. The rule of law making parol evidence incompetent to vary or contradict the terms of a written contract has no application to parol evidence showing that both parties under-

stood that their contract was to have no binding effect upon them and that what appeared to be a contract was intended for another purpose. *Earle* v. *Rice*, 111 Mass. 17. *Fleming* v. *Morrison*, 187 Mass. 120. *New York Trust Co.* v. *Island Oil & Transport Corp.* 34 Fed. (2d) 655. *In re H. Hicks & Son, Inc.* 82 Fed. (2d) 277. *Lavalleur* v. *Hahn*, 152 Iowa, 649. *Southern Street Railway Advertising Co.* v. *Metropole Shoe Manuf. Co.* 91 Md. 61. *Grierson* v. *Mason*, 60 N. Y. 394. Williston, Contracts (Rev. ed.) § 21. Compare Wigmore, Evidence (3d ed.) § 2406.

The interlocutory and final decrees must be reversed. A final decree is to be entered establishing an indebtedness from the plaintiff to the defendant Gunn in the amount of $936.23 together with interest from the filing of the bill and costs, and ordering payment thereof; and dismissing the bill against the defendant bank.

*Ordered accordingly.*