CITY OF WALTHAM *vs.* CHARLES F. MIGNOSA.

Middlesex.    February 7, 1951. — March 30, 1951.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Health, Board of. Public Health. Regulation. Poultry. Zoning. Equity*
*Jurisdiction,* Health regulation, Criminal acts. *Words,* "Orders."

A regulation of a commission of a city having the powers of a board of
health, that "No person, firm or corporation shall keep cows, swine,
goats, roosters, fowl, ducks, pigeons or rabbits within the City without
a permit from the" commission, was valid under G. L. (Ter. Ed.)
c. 111, § 143, as appearing in St. 1948, c. 480, § 1, and, in a suit in
equity by the city against one who operated a farm therein on which
he kept turkeys and hens without a permit from the commission, the
plaintiff was entitled to a decree enjoining the defendant from violating
the regulation.

The fact that operations conducted on certain premises in a municipality
were permitted by the zoning law thereof did not exempt the operations
from a valid regulation adopted by the board of health pursuant to
G. L. (Ter. Ed.) c. 111, § 143, as appearing in St. 1948, c. 480, § 1.

The provision of G. L. (Ter. Ed.) c. 111, § 187, that "The supreme judicial
or superior court, upon the application of the board of health of a
town, may enforce the orders of said board relative to public health,"
confers on such courts jurisdiction in equity to enforce a regulation
made by the board under § 143, as amended, notwithstanding that a
violation of the regulation is a crime under § 31, as amended.

BILL IN EQUITY, filed in the Superior Court on October
20, 1949.

The suit was heard by *Hanify,* J.

*P. K. Connolly,* for the plaintiff.

*L. D. Yont,* for the defendant.

SPALDING, J.   This bill in equity is brought to enjoin an
alleged violation by the defendant of a health regulation and
his continuing to maintain his property in such a manner
as to constitute a nuisance.   The case comes here on the
plaintiff's appeal from a final decree dismissing its bill.

By virtue of Spec. St. 1919, c. 114, § 1, the powers of the
board of health in the city of Waltham were vested in a

newly created public welfare commission, hereinafter called
the commission. The commission has adopted certain regu-
lations pertaining to the keeping of domestic animals, which
provide in part: "No person, firm or corporation shall keep
cows, swine, goats, roosters, fowl, ducks, pigeons or rabbits
within the City without a permit from the . . . [commis-
sion]. Such permit may be granted at the discretion of the
[commission] and shall not be transferable." For approxi-
mately twenty-four years the defendant has operated a farm
or truck garden including the keeping of turkeys and hens
on several acres of land in Waltham located within several
hundred feet of a public school. As part of his truck farm-
ing operations the defendant each year raises large quanti-
ties of vegetables which he sells at wholesale and retail.
The farm also produces several hundred eggs a day which
are sold in the same manner. The zoning laws permit
nurseries, truck gardens, farms, and greenhouses in the area
in which the defendant's farm is located. For several years
the defendant had a permit from the commission to keep
two thousand hen fowl, but his last permit expired on April
30, 1949. His application for a renewal of the permit was
denied and he was so informed.

The foregoing facts were submitted to the judge in a
statement of agreed facts and it was agreed that they were
all the facts material to the issues raised by the pleadings.

We need not consider the issue of nuisance on which the
plaintiff's bill is based in part because the facts do not
establish a nuisance. Since the defendant concedes that he
is now operating a turkey farm without a license, the ques-
tion narrows down to whether the regulation which forbids
him from doing so is valid and whether he may be enjoined
from violating it.

We are of opinion that the regulation in question and its
application to the facts here can be rested upon that portion
of G. L. (Ter. Ed.) c. 111, § 143, as appearing in St. 1948,
c. 480, § 1, which provides in part that "No trade or employ-
ment which *may* result in a nuisance or be harmful to the
inhabitants, injurious to their estates, dangerous to the

public health, or *may* be attended by noisome and injurious odors shall be established in a city or town except in such a location as may be assigned by the board of health thereof . . . and such board of health may *prohibit* the exercise thereof within the limits of the city or town or in places not so assigned, in any event . . ." (emphasis supplied). It will be noted that the trade or employment need not in fact be a nuisance or attended by noisome and injurious odors before the power of prohibition arises.[1] Although not per se a nuisance, it is conceivable that there might be circumstances where the raising of a large number of hens and turkeys might become one (*Tracht* v. *County Commissioners of Worcester*, 318 Mass. 681), and it is not unlikely that such an operation would or might be attended by noisome and injurious odors. In view of the approval by this court of regulations enacted under § 143 and the earlier provisions from which that section stems, it is not open to the defendant to argue that the regulation here involved is unreasonable. See *Taunton* v. *Taylor*, 116 Mass. 254 (regulation forbidding the exercise of the trade of "preparing tripe, manufacturing neat's-foot oil, tallow and gluestock, and the boiling and trying of bones, hoofs, heads, refuse and partially decayed animal matter"); *Quincy* v. *Kennard*, 151 Mass. 563 (regulation forbidding the keeping of swine within the town without a permit); *Lexington* v. *Miskell*, 260 Mass. 544 (same); *Swansea* v. *Pivo*, 265 Mass. 520 (regulation forbidding the keeping of swine and the dumping of garbage within the town limits without a permit). The general power of boards of health to make regulations is found in G. L. (Ter. Ed.) c. 111, § 31, as amended by St. 1937, c. 285, which provides that such boards "may make reasonable health regulations."

The defendant is not aided by the fact that his farm is located in an area where farming is permitted under the

---

[1] Prior to the 1948 amendment of § 143 the powers of the board extended only to the exercise of a trade or employment "which *is* a nuisance or hurtful to the inhabitants, injurious to their estates, dangerous to the public health, or *is* attended by noisome and injurious odors . . ." (emphasis supplied).

zoning laws. The regulations promulgated by a board of health pursuant to § 143 must not contravene the zoning laws, but the fact that a trade or employment is permitted under such laws does not mean that it need not also comply with valid orders and regulations of a board of health. *Building Commissioner of Medford* v. *C. & H. Co.* 319 Mass. 273, 282, 286.

Although by virtue of § 31, as amended, criminal sanctions are imposed for the violation of the regulation here involved, the defendant rightly does not argue that its enforcement in equity would collide with the principle discussed and applied in *Commonwealth* v. *Stratton Finance Co.* 310 Mass. 469, and *Malden* v. *Flynn*, 318 Mass. 276, 282. Those cases point out that the trend of our decisions is hostile to the development of a "criminal equity" and that, with certain exceptions, the jurisdiction of a court of equity cannot be invoked to enjoin the violation of criminal laws in the absence of a statute conferring such jurisdiction. But here the statute (G. L. [Ter. Ed.] c. 111, § 187) provides that "The supreme judicial or superior court, upon the application of the board of health of a town,[1] may enforce the orders[2] of said board relative to public health. Sections thirty-four and thirty-five of chapter two hundred and fourteen shall apply to such cases . . . ." It is true that the statute does not specifically confer equitable jurisdiction as did its predecessor, R. L. c. 75, § 141, but we do not regard the omission to do so as significant. See *Scaccia* v. *Boston Elevated Railway*, 317 Mass. 245, 251; *Carter* v. *Burgess*, 323 Mass. 295, 300. The sections of c. 214 just referred to are those relating to the framing of jury issues in equity cases. The language of § 187 conferring power on this court and the Superior Court to "enforce the orders of said board"

---

[1] By G. L. (Ter. Ed.) c. 111, § 189, it is provided that "Unless the context otherwise requires, the provisions of this chapter shall apply to cities so far as consistent with their several charters." See also G. L. (Ter. Ed.) c. 4, § 7, Thirty-fourth.

[2] The word "orders" under § 143 has been construed to include general regulations relating to a trade or employment. *Taunton* v. *Taylor*, 116 Mass. 254, 261. *Kineen* v. *Board of Health of Lexington*, 214 Mass. 587, 591.

would have little meaning if it did not include jurisdiction in equity, for the most effective method of enforcing such orders apart from the criminal penalties would generally be on the equity side of the court. The fact that that power was conferred on both this court and the Superior Court makes it very unlikely that § 187 had to do with the imposition of criminal penalties, especially since the Superior Court already possessed that power under other provisions. We need not decide whether apart from § 187 the regulation could be enforced in equity. See *Swansea* v. *Pivo,* 265 Mass. 520, 522; *Commonwealth* v. *Stratton Finance Co.* 310 Mass. 469, 473. Nor are we here concerned with what remedy, if any, the defendant might have had under G. L. (Ter. Ed.) c. 111, § 147, in a case like the present one, for it does not appear that he took any of the steps that that section requires. See *Lexington* v. *Miskell,* 260 Mass. 544, 546–547; *DeVincent* v. *Public Welfare Commission of Waltham,* 319 Mass. 170, 171.

The decree dismissing the bill is reversed and a new decree is to be entered enjoining the defendant from violating the regulation herein discussed. The plaintiff is to have costs of this appeal.

*So ordered.*