BOARD OF HEALTH OF WAREHAM *vs.* MARINE
BY-PRODUCTS CO.

Plymouth.    April 7, 1952. — July 3, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Health, Board of. Public Health. Equity Pleading and Practice*, Parties.
*Municipal Corporations*, Officers and agents.

The board of health of a town has authority to institute a suit in behalf
of the town to enforce an order of the board; such suit should be in
the name of the town.
An order by the board of health of a town to the owner of a plant therein,
stating that the board "found that a nuisance . . . exists by reason
of the emanation of foul and offensive odors caused by the cooking or
dehydrating of trash fish used in the manufacture of fish meal and fish
oil by" the owner at the plant and "that said . . . odors have injured
and are injuring the residents of certain areas . . . [of] the town
. . . . in the enjoyment and comfort of their homes," and ordering the
owner to cease further operation of "the business," contained state-

ments of all facts necessary under G. L. (Ter. Ed.) c. 111, § 143, as appearing in St. 1948, c. 480, § 1, to support it as an order of prohibition directed at the manufacture of fish meal and fish oil, and was valid.

BILL IN EQUITY, filed in the Superior Court on September 19, 1951.

The suit was heard by *Rome*, J., on demurrer.

*Gerald P. Walsh*, for the plaintiff.

*Harry Bergson*, for the defendant.

QUA, C.J. This bill alleges that it is brought by the members of the board of health of Wareham "on behalf of the inhabitants of said town." The board had authority to institute a suit for the town. *Taunton* v. *Taylor*, 116 Mass. 254, 262. But the suit should have been in the name of the town, and an amendment to make it so would be advisable, though the point is not now raised. *Worcester Board of Health* v. *Tupper*, 210 Mass. 378, 382–383.

The case is here by report of the trial judge of his action in entering an interlocutory decree sustaining the defendant's demurrer to the bill. G. L. (Ter. Ed.) c. 214, § 30.

The material allegations of the bill are in substance these: The defendant owns a plant at South Wareham "designed for the processing and manufacture of certain by-products from fish or fish products." On September 20, 1950, the board, acting under G. L. (Ter. Ed.) c. 111, served a notice on the defendant stating that, after hearing the complaints of residents and hearing representatives of the defendant on September 13, and after discussing the results of its own investigation, the board "found that a nuisance still exists by reason of the emanation of foul and offensive odors caused by the cooking or dehydrating of trash fish used in the manufacture of fish meal and fish oil by Marine By-Products Co. at its plant in South Wareham, Massachusetts; . . . that said foul and offensive odors have injured and are injuring the residents of certain areas on [*sic*] the town of Wareham in the enjoyment and comfort of their homes"; and that therefore by authority of G. L. (Ter. Ed.) c. 111, § 143, "you are hereby ordered to cease the further opera-

tion of the business of Marine By-Products Co. at South Wareham, Massachusetts, within ten (10) days from the receipt by you of this order." The bill then goes on to allege that no special authorization under G. L. (Ter. Ed.) c. 111, § 148, to continue the trade or employment pending appeal proceedings had been given to the defendant. The bill further alleges that upon subsequent investigation the board learned that in fact the defendant was operating its plant processing fish or fish products in wilful violation of the order and causing offensive, noxious and foul odors to be emitted which have injured and are injuring the residents of the town and interfering with their enjoyment and comfort in their homes in surrounding areas. The prayers are for injunctive and other relief.

General Laws (Ter. Ed.) c. 111, § 143, as appearing in St. 1948, c. 480, § 1, under which the order of the board purports to have been made, provides, "No trade or employment which may result in a nuisance or be harmful to the inhabitants, injurious to their estates, dangerous to the public health, or may be attended by noisome and injurious odors shall be established in a city or town except in such a location as may be assigned by the board of health thereof . . . and such board of health may prohibit the exercise thereof within the limits of the city or town or in places not so assigned, in any event. Such assignments . . . may be revoked when the board shall think proper."[1] There are in the same section provisions for appeal by any person aggrieved to the department of public health, and in § 147, as amended by St. 1948, c. 480, § 2, there are provisions for appeal to a jury in the Superior Court. There are also provisions for enforcement of the orders of the board. §§ 146, 187.

The principal contention of the defendant is that the order of the board of September 20, 1950, as appearing in the bill, is invalid as matter of law. It is contended that

[1] It would seem that a prohibition of an employment or trade at a particular place would in itself constitute a revocation of any such assignment for that place. See *Revere* v. *Riceman*, 280 Mass. 76, 80, 82–83.

this is so for two reasons, (1) that the board made no determination that the trade carried on by the defendant was in and of itself an offensive trade, and (2) that the order that the defendant cease the operation of its entire business at South Wareham exceeded the authority of the board, since the order contains no statement that the business of the defendant there carried on was confined to the offensive trade, if there was one.

We cannot adopt either proposition.

We do not pause to discuss the question to what extent, if at all, a board of health acting under § 143 is bound to make express findings of facts required to support its order. It is to be noted that under that section it is not necessary that the trade shall actually be a nuisance or offensive. It is enough if it *"may* be attended by noisome and injurious odors" (emphasis supplied), and it is enough if the odors may be injurious to the "estates" of the inhabitants. It does not require much imagination to assume that any business of manufacturing fish meal and fish oil "may be attended by noisome and injurious odors." *Waltham* v. *Mignosa,* 327 Mass. 250, 251–252.

But quite apart from these considerations, we are of opinion that the order of the board, properly construed, does contain statements of all necessary facts. Boards of health are likely to be composed of laymen not skilled in drafting legal documents, and their orders should be read with this fact in mind. They should be so construed as to ascertain the real substance intended and without too great attention to niceties of wording and arrangement. *Taunton* v. *Taylor,* 116 Mass. 254, 261. *Caires* v. *Building Commissioner of Hingham,* 323 Mass. 589, 597. In the order before us the prohibited "trade or employment" was "the business" of the defendant at South Wareham. Immediately preceding the prohibitory command reference was made to the fact that the defendant was manufacturing fish meal and fish oil at its plant in South Wareham, and that in connection with such manufacture offensive odors had emanated. It is not going too far as matter of construction to say that this

manufacture was the "business" intended to be prohibited. The next question is whether this business was stated to be one which *might* result in a nuisance or *might* be attended by noisome and injurious odors. At this point the order goes beyond any requirements and, instead of contenting itself with stating that the business *might* result in a nuisance or be attended by noisome and injurious odors, asserts that, by reason of the cooking or dehydrating of trash fish used in the manufacture, a nuisance actually exists, and that foul and offensive odors attendant upon that manufacture are actually injuring residents "in the enjoyment and comfort of their homes." This is injury to their "estates."

Whether it might be possible to manufacture fish meal and fish oil without cooking or dehydrating trash fish and without being offensive is beside the point. The board is not expected to be composed of experts in all processes of manufacturing and to separate out the causes of the nuisance or offence. It is empowered by § 143 to prohibit the exercise of the trade or employment as a whole whenever by any of the methods employed it has become or may become a nuisance or otherwise offensive as set forth in the statute. If the defendant carries on or desires to carry on any business at its plant at South Wareham other than the manufacture of fish meal and fish oil, such other business is not affected by the order. We think the order is valid under G. L. (Ter. Ed.) c. 111, § 143, as appearing in St. 1948, c. 480, § 1, under which the board purported to proceed.

These conclusions are consistent with previous decisions in which the same or predecessor statutes were involved, although in those decisions the same problems were not raised in the same way. *Belcher* v. *Farrar*, 8 Allen, 325. *Taunton* v. *Taylor*, 116 Mass. 254. *Lexington* v. *Miskell*, 260 Mass. 544. *Swansea* v. *Pivo*, 265 Mass. 520. *Ryder* v. *Board of Health of Lexington*, 273 Mass. 177. *Revere* v. *Blaustein*, 315 Mass. 93. *Waltham* v. *Mignosa*, 327 Mass. 250. Compare *Belmont* v. *New England Brick Co.* 190 Mass. 442, where action of the board was held unreasonable because of lack of relationship between the prohibited trade and injury to

the public. The case last cited was distinguished in *Lexington* v. *Miskell*, 260 Mass. 544, 546.

We think also that the bill sets forth with sufficient particularity acts committed by the defendant in violation of the order of the board.

The interlocutory decree sustaining the demurrer is reversed, and an interlocutory decree is to be entered overruling the demurrer.

*So ordered.*