# Board of Health of Woburn *vs.* George Sousa & others.

Middlesex.   January 7, 1959. — February 10, 1959.

Present: Wilkins, C.J., Ronan, Spalding, Whittemore, & Cutter, JJ.

*Health, Board of. Public Health. Piggery. Nuisance. Regulation. Permit. Equity Jurisdiction,* Health regulation. *Quasi Judicial Tribunal. Public Officer. Evidence,* Relevancy and materiality. *Equity Pleading and Practice,* Parties, Injunction. *Municipal Corporations,* Officers and agents.

A suit which a local board of health is authorized to institute on behalf of its municipality should be in the name of the municipality. [548]

A regulation of the board of health of a city prohibiting the keeping of pigs within its limits without first obtaining a permit from the board could properly be adopted under the power to make reasonable health regulations granted by G. L. c. 111, § 31, as amended through St. 1937, c. 285, and the power to make regulations relative to nuisances granted by c. 111, § 122, as well as under § 143; and such regulation could be enforced in equity under § 187 without issuance by the board of orders of prohibition under §§ 143, 146. [548–552]

It would be improper for a municipal board having the power to grant or withhold a permit simply to fail to act at all on an appropriate application for a permit. [553]

At the hearing of a suit in equity by a municipality to enjoin the defendants from keeping pigs on their premises without a permit in violation of a valid regulation of the board of health requiring such a permit, evidence that the board was determined not to grant a permit applied for by the defendants long after the commencement of the suit was properly excluded as irrelevant. [553–554]

A final decree in a suit in equity by a municipality permanently enjoining the defendants from keeping pigs on their premises without a permit from the board of health required by a regulation of the board was affirmed without imposition of any conditions, even though the board had failed to act upon a pending application for the permit by the defendants, where it appeared that the defendants had moved the pigs onto their premises without first obtaining a permit and had not filed the application until nearly three months after the suit was commenced; it was not to be assumed that the board would not give proper consideration to an application for a permit after the defendants had complied with the regulation. [554]

BILL IN EQUITY, filed in the Superior Court on November 27, 1957.

The suit was heard by *Thompson, J.*

*Sherman P. Gorshel,* for the defendants.

*Francis P. Cullen,* City Solicitor, for the plaintiff.

CUTTER, J.  This is a bill in equity filed on November 27, 1957, by the board of health.  The defendants appeal from a final decree permanently enjoining them from keeping swine on certain premises in Woburn and from transporting offensive substances through the streets of Woburn, without in each instance obtaining a permit as required by regulations of the board.[1]  "Since the judge made no report of the material facts, the entry of the decree imported a finding of every fact essential to sustain it and within the scope of the pleadings."  *Marlowe* v. *O'Brien,* 321 Mass. 384, 386.  The evidence, mainly oral, is reported.  We cannot say that the judge would have been plainly wrong in concluding (1) that the pertinent regulations had been duly adopted; and (2) that the defendants since about October 30, 1957, had been keeping about one thousand swine on their premises and transporting offensive materials through the streets without obtaining permits.

1. Although the board of health had authority to institute a suit for the city, it should have been brought in the name of the city.  An amendment may be allowed for this purpose, even though the point is not now raised.  See *Board of Health of Wareham* v. *Marine By-Products Co.* 329 Mass. 174, 175.

2. The board of health of a city or town, pursuant to at least three legislative delegations of power, may require a

[1] The regulations, so far as here relevant, read: 1. "No individual or individuals . . . shall keep . . . swine within the limits of this municipality without first obtaining a permit from the [b]oard of [h]ealth.  All such permits shall expire on May 1st of each year unless sooner revoked.  Any permit may be revoked at any time by the [b]oard of [h]ealth for cause.  2. A license to transport garbage, offal or other offensive substances along the public highways of this municipality must be obtained from the [b]oard of [h]ealth in accordance with Chapter 111, Section 31A and no such materials shall be so transported without such a license."  (Then follow provisions as to the expiration and revocation of licenses and concerning manner of transporting such materials.)  The regulations contain fifteen additional sections regulating the conduct of such piggeries as may be permitted at all.

permit for keeping swine. G. L. c. 111, §§ 31, 122, 143, as amended. See §§ 146, 147, as amended.[2]

The authority to make the regulation has usually been found in § 143, or in one of its predecessors. In *Quincy* v. *Kennard*, 151 Mass. 563, it was held within the power of a board of health to require a permit for the keeping of swine as a condition of doing what could have been absolutely prohibited. In considering comparable regulations in *Lexington* v. *Miskell*, 260 Mass. 544, 546–547, and in *Waltham* v. *Mignosa*, 327 Mass. 250, 252–254, § 31 was referred to in addition to § 143. The *Lexington* case also referred to § 122. References by the court to the remedy provided by § 147 perhaps imply that the respective regulations were considered as adopted under § 143. In *Swansea* v. *Pivo*, 265 Mass. 520, 521, 523, the conduct of the board in enforcing its regulation showed that it was acting under §§ 143 and 146, regardless of whether it had adopted its regulation under § 31, § 122, or § 143. In *Cochis* v. *Board of Health of*

---

[2] Section 31, as amended through St. 1937, c. 285, reads: "Boards of health may make reasonable health regulations. All regulations . . . shall be published once . . . and such publication shall be notice to all persons. Whoever . . . violates any reasonable health regulation, made under authority of this section, . . . shall be punished by a fine of not more than twenty dollars."

Section 122 reads: "The board of health shall examine into all nuisances, sources of filth and causes of sickness . . . which *may* . . . be injurious to the public health . . . and shall make regulations for the public health and safety relative thereto . . . . Whoever violates any such regulation shall forfeit not more than one hundred dollars" (emphasis supplied).

Section 143, as amended by St. 1956, c. 275, § 1, reads: "No trade or employment which *may* result in a nuisance or be harmful to the inhabitants . . . dangerous to the public health, or *may* be attended by noisome and injurious odors shall be established in a city or town except in such a location as may be assigned by the board of health . . . after a public hearing . . . and such board of health may prohibit the exercise thereof within the limits of the city or town or in places not so assigned, in any event. . . ." (emphasis supplied).

Section 146 reads: "Orders of prohibition issued under section one hundred and forty-three shall be served . . . upon the occupant or person having charge of the premises where such trade or employment is exercised, and the board shall take all necessary measures to prevent such exercise. Whoever refuses or neglects for twenty-four hours . . . to obey . . . shall forfeit not . . . more than five hundred dollars."

Section 147, as amended by St. 1948, c. 480, § 2, reads: "Whoever is aggrieved by an order made under section one hundred and forty-three . . . may, within three days after service of the order upon him, give written notice of appeal to the board . . . and file a petition for a jury in the superior court . . . and . . . may have a trial in the same manner as other civil cases are tried by jury. . . ."

*Canton,* 332 Mass. 721, 722, this court (at p. 724), while recognizing that § 31 authorized "boards of health to make reasonable regulations," stated that § 143 was a section authorizing "such boards to make specific *prohibitions*" (emphasis supplied). It indicated that it was under § 143 that "the board presumably acted in promulgating . . . regulations" absolutely prohibiting piggeries. Cf. *Board of Health of Wareham* v. *Marine By-Products Co.* 329 Mass. 174, 178, a proceeding under § 143, not involving piggeries.

The regulations of the Woburn board of health were adopted April 27, 1953. When published, reference was made to §§ 31, 122, and 143, among other sections of c. 111, as providing authority for the regulations.

Prior to St. 1920, c. 591, § 17, authority to regulate piggeries by a permit could have been found in the predecessors of §§ 122 and 143 (see R. L. c. 75, §§ 65, 91). Section 17, by enacting what is now c. 111, § 31, provided a comprehensive, separate, additional source of authority for health regulations. The new section had been recommended by the commission (see St. 1919, c. 248) to complete the work of revising and codifying the laws relating to towns. Its report (1920 Senate Doc. No. 2, p. 14) said, "The provisions of law are such that considerable doubt has arisen with regard to the powers of the board of health to make regulations. In order to make matters clear the commission recommends the passage of section 24 of the general bill" (p. 27)[3] attached to the commission's report.

In the present case, the board of health has not proceeded to enforce its regulation under §§ 143 and 146. No order of prohibition appears to have been served upon the defendants under § 146, which provides one method for enforcing a regulation adopted under § 143. We therefore consider

[3] The provisions of § 31 have been called "superfluous." See Rep. Atty. Gen. (Jan. 1923), Pub. Doc. 12, 1922, p. xxxi, which recommended elimination of the additional power granted by the section. See also Rep. Atty. Gen. (Jan. 1924), Pub. Doc. 12, 1923, p. 17, which states that "G. L. c. 111, §§ 31, 122, and 127, all empower local boards of health to make reasonable health regulations." By St. 1924, c. 180, § 31 was amended to remove any requirement that regulations adopted under § 31 be approved by the Attorney General, as recommended in his 1923 report.

whether these regulations could have been adopted under
§ 31 and § 122, as well as under § 143, and whether, regard-
less of the section under which they were adopted, they can
be enforced in equity under G. L. c. 111, § 187,[4] without
compliance with §§ 143 and 146.

In *Malden* v. *Flynn*, 318 Mass. 276, 277–279, it was held
that after the enactment in 1937 of the specific provisions
of § 31A (see amendment by St. 1945, c. 423) and § 31B
(inserted by St. 1937, c. 282) the "authority of boards of
health to prohibit absolutely . . . by a general regulation
the transportation of garbage . . . formerly possessed by
virtue of what is now . . . § 122, no longer exists." This
court took the position that the subject matter was there-
after controlled by the very specific provisions on this sub-
ject of § 31A and § 31B which had in effect (at p. 278)
"carved out of the general power of boards of health over
nuisances . . . the power to deal with the . . . transporta-
tion of garbage, and the authority of boards over this par-
ticular subject."[5] The *Malden* case suggests the question
whether §§ 143, 146, and 147 and related sections so com-
pletely deal with noisome trades like piggeries as to pre-
clude the adoption of regulations regulating, but not pro-
hibiting, such trades under §§ 31 and 122. We need not
decide whether complete prohibition of all piggeries can be
dealt with only under § 143. There is, in any event, no
express statutory indication that regulation of piggeries, by
requiring permits, may not be undertaken under §§ 31 and
122. As has been noted, § 31 was passed as legislation of
broad and general scope, after the predecessors of §§ 143,
146, and 147 had been on the statute books for many years.

---

[4] Section 187 provides that the "supreme judicial or superior court, upon
the application of the board of health of a town, may enforce the orders of
said board relative to public health. . . ." In *Waltham* v. *Mignosa*, 327
Mass. 250, 253–254, it was pointed out that this provision applied to cities,
as well as to towns, and it was held to give equitable jurisdiction to enforce
regulations of a board of health.

[5] No serious problem arises with respect to the second regulation here dis-
cussed (see footnote 1, *supra*) which merely incorporates by reference § 31A.
It can be sustained on this ground as to its requirement of a permit and under
§ 31B so far as it (in provisions not quoted or here relevant) lays down rea-
sonable rules governing transportation pursuant to permit.

The legislative history (see footnote 3, *supra*, and the text to which it relates) shows no purpose to limit its scope. See *Brielman* v. *Commissioner of Pub. Health of Pittsfield*, 301 Mass. 407, 409, which refers to § 17 of the 1920 statute as establishing a "broad power" which is "not subject to the limitations of earlier rule making powers of boards of health."

The requirement of a permit is a traditional method of regulation, and a regulation calling for a permit certainly may be adopted where there exists some statutory delegation of authority (as here may be found in § 143) to prohibit absolutely. See *Butler* v. *East Bridgewater*, 330 Mass. 33, 36–38, where, as here, the power to prohibit existed. In that case, instead of an absolute prohibition, the town required only a permit and invested the licensing authority "with quasi judicial authority to determine the facts and to pass upon the application [for a permit] in each instance under the serious sense of responsibility imposed upon them by their official positions and the delicate character of the duty entrusted to them." In that case, also, the court distinguished *Commonwealth* v. *Maletsky*, 203 Mass. 241, *Goldstein* v. *Conner*, 212 Mass. 57, and *Kilgour* v. *Gratto*, 224 Mass. 78, on grounds which are applicable in the present case. It is immaterial, in determining whether a regulation requiring a permit for a piggery may be adopted under §§ 31 and 122, that absolute statutory power to prohibit piggeries (which reinforces the power to require a permit) exists most clearly under another section (§ 143). We hold that the regulations relating to piggeries (see footnote 1, *supra*) could properly have been adopted under § 31 and § 122, and that enforcement of such regulations is permitted under § 187 (see footnote 4, *supra*).

The provisions of §§ 146 and 147 in terms apply only to orders under § 143. See *DeVincent* v. *Public Welfare Commn. of Waltham*, 319 Mass. 170, 171. We hold that these sections have no necessary application to the enforcement of general regulations valid under §§ 31 and 122, unless the method of enforcement in fact adopted by the appropriate public authorities is that under § 146.

3. The evidence would justify findings that the defendants moved some one thousand pigs to the premises here in question, purchased by them in late October or November, 1957, without obtaining a permit to keep them there. Applications for permits to keep the pigs on these premises were not filed until February, 1958, nearly three months after this bill was filed. The board of health has taken no action on these applications.

Obviously, if the board of health should fail to act upon the defendants' applications, the injunction ordered by the final decree would give to the board's inaction the effect of a complete prohibition without the consideration by the board impliedly called for by the regulation. A board which has power to grant or withhold a permit must decide "in a fair, judicial and reasonable manner upon the evidence as presented . . . keeping in mind the objects" of the applicable regulation. *Butler* v. *East Bridgewater*, 330 Mass. 33, 38. Complete inaction may be as arbitrary as affirmative action. To be sure, a board which does not act promptly may be compelled to act by mandamus. G. L. c. 249, § 5 (as amended through St. 1943, c. 374, § 2). Also, if the board's decision[6] reveals errors of law, the remedy by certiorari is available. *Butler* v. *East Bridgewater*, 330 Mass. 33, 39. See *Tracht* v. *County Commrs. of Worcester*, 318 Mass. 681, 685–687. Of course, in passing upon applications for a permit, the board of health may take into account all relevant considerations of public health, safety, and welfare which bear upon whether, in an expanding community, piggeries in addition to any now permitted should be conducted. It is improper, however, for a board simply to fail to act at all on applications for permits.

The defendants contend that the board of health was determined not to grant a permit to the defendants and that evidence to that effect was improperly excluded. See, however, *Swansea* v. *Pivo*, 265 Mass. 520, 523. The evidence was irrelevant here in a proceeding to enforce a regulation

---

[6] The State administrative procedure act, see G. L. c. 30A, §§ 10, 11, is not applicable to this local board.

which the defendants had disregarded until they had confronted the board of health with the accomplished fact of the presence of one thousand pigs on the land. As to the future, it is not to be assumed that the board of health will not apply proper principles, now that those principles have been indicated, in considering any appropriate applications for permits after there has been compliance by the defendants with the regulation. *Brookline* v. *Co-Ray Realty Co. Inc.* 326 Mass. 206, 214, and cases cited. In view of the defendants' conduct, this is not an occasion where we should impose conditions on injunctive relief. Cf. *Jurewicz* v. *Jurewicz,* 317 Mass. 512, 517; *Kressler* v. *Flynn,* 323 Mass. 610, 612–613.

4. The decree is affirmed. The city is to have costs of this appeal.

*So ordered.*