TOWN OF HOLDEN *vs.* HOLDEN SUBURBAN SUPPLY
COMPANY, INC. & others.

Worcester.   September 25, 1961. — November 17, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& KIRK, JJ.

*Health, Board of. Public Health. Sewage. Nuisance. Regulation. Evidence,* Of administrative interpretation. *Equity Pleading and Practice,* Parties, Decree, Suit to enforce sewage disposal regulations.

A suit which a local board of health is authorized to institute on behalf of its municipality should be brought in the name of the municipality. [188]

A board of health was authorized to adopt regulations pertaining to the disposal of house sewage under either or both of G. L. c. 111, § 31, as amended, which empowers a board of health to make "reasonable health regulations," and § 127, as amended, which empowers it to make "regulations . . . relative to house drainage"; that the regulations purported to have been made under § 31 was immaterial.   [190]

Adequate standards for the construction of cesspools, including overflow cesspools, were provided by regulations of a board of health prohibiting construction thereof without first obtaining a permit; requiring that they be constructed of "approved material and design," located at certain minimum distances from dwellings, streams, ways, and adjoining lots, and equipped with safe and suitable removable covers; allowing overflow cesspools to be entirely covered with earth; and requiring inspection of the construction by the board or its agent before covering. [191]

At the trial of a suit in equity by a municipality to enforce sewage disposal regulations of its board of health with respect to particular premises of the defendant, there was no error in the exclusion of evidence offered by the defendant of the construction put by the board on such

regulations in connection with other premises owned by the defendant. [191–192]

In a suit in equity by a municipality to enforce sewage disposal regulations of its board of health against a landowner who constructed a cesspool on his premises, a final decree merely declaring the validity of the regulations and the defendant's violation of one of them prohibiting the construction of the cesspool without first obtaining a permit from the board should be modified by adding provisions requiring the defendant to seek a permit for the cesspool, and to uncover or allow uncovering it in order that it might be inspected in conformity to one of the regulations providing for such inspection before covering of the construction. [192]

The final decree in a suit in equity by a municipality against a corporation, its president and principal stockholder, and an employee of the corporation enforcing sewage disposal regulations of the plaintiff's board of health with respect to premises owned by the corporation should have dismissed the bill as to the individual defendants. [192]

BILL IN EQUITY, filed in the Superior Court on November 10, 1959.

The suit was heard by *Paquet, J.*

*Charles W. Proctor,* for the defendants.

*Paul L. Hinckley,* for the plaintiff.

WILLIAMS, J. This is a suit in equity by the town of Holden, which by amendment has been substituted as plaintiff for the town's board of health (*Board of Health of Wareham* v. *Marine By-Products Co.* 329 Mass. 174, 175), against Holden Suburban Supply Company, Inc., its president and principal stockholder, John F. Crystoff, and John Crystoff, an employee.

The corporate defendant owns a parcel of land in the town on which is located a four family house occupied by tenants. On or about September 17, 1959, it came to the attention of the town's board of health that a cesspool was being constructed and installed by the company on its premises without obtaining a permit from the board. It was additional to one already existing which was in good operating condition. The new cesspool was designed to take care of the overflow from the earlier cesspool with which it was to be connected by an eight inch pipe, four feet in length. No application had been made for a permit to construct this overflow cesspool.

Provision for such permit is contained in the regulations of the board pertaining to the disposal of house sewage, adopted on June 1, 1954.[1]

The town seeks orders by the court (1) that the new cesspool be uncovered so that it may be inspected by the board; (2) that the defendants obtain a permit for its installation; and (3) that the "disposal works" be installed "in accordance with the plans approved by the Board . . . ." A demurrer of the defendants was overruled.

The judge found that the corporate defendant, through its president John F. Crystoff and by its employee John Crystoff, constructed and installed the additional cesspool in violation of § 5 of the board of health regulations. He entered a final decree declaring (1) that the town had authority through the board of health to make reasonable health regulations pursuant to G. L. c. 111, § 31, as amended; (2) that § 5 of the regulations is valid; (3) that the corporation has violated § 5; and (4) that the plaintiff have its costs. From this decree the defendants appealed.

It is provided by G. L. c. 111, § 31, that "Boards of health may make reasonable health regulations" and by G. L. c. 111, § 127, as appearing in St. 1937, c. 339, that "The board of health of a city or town may make and enforce regulations for the public health and safety relative to house

---

[1] "Section 5. No cesspool, septic tank, permanent vault privy, or other means of sewage disposal, shall hereafter be constructed or installed in this town until a permit has first been obtained from the Board of Health. In the construction of new buildings, cesspools shall be permitted only where soil has unusually good absorptive qualities."

"Section 7. All sewage disposal works hereafter constructed or installed shall be of approved material and design and, unless otherwise specified by the Board of Health, shall be located not less than twenty (20) feet from any dwelling, not less than twenty-five (25) feet from any stream, not less than ten (10) feet from line of any street, or passageway, and not less than ten (10) feet from line of adjoining lot; all measurements being taken from the nearest portion of the sewage disposal works. Cesspools shall be provided with a safe, suitable removable cover.

"Overflow cesspools may be entirely covered with earth. The use of an abandoned well as a cesspool in areas where water supplies are obtained from the ground is hereby prohibited."

"Section 8. The owner, person or agent responsible for the construction of local sewage disposal works shall have such construction inspected by the Board of Health or its agent before such construction is covered, and such covering shall thereafter be applied in a manner approved by the Board of Health."

drainage and connection with common sewers, if such a sewer abuts the estate to be drained. Whoever violates any such regulation shall forfeit not more than one hundred dollars.''

The regulations adopted were for the preservation of the public health and relate to the disposal of one of the most dangerous forms of sewage. They belong ''to that class of police regulations to which private rights are held subject . . . founded upon the right of the public to protect itself from nuisances, and to preserve the general health.'' *Commonwealth* v. *Roberts,* 155 Mass. 281, 282. See *Cochis* v. *Board of Health of Canton,* 332 Mass. 721, 723.

It is not contended by the defendants that the regulation of the methods for the disposal of house drainage is not a matter within the authority of the board of health but that the regulations in question are invalid, first, because purporting to be adopted under provisions of § 31 of c. 111 of the General Laws, and second, because they fail to furnish an adequate standard by which the landowner may be guided in constructing his system for drainage disposal.

There is no merit in the first contention. It is plain that the matter of house drainage so affects the health of the community that the municipal authorities may be authorized by the Legislature under the police power to regulate it. To implement this power two statutes have been enacted: § 31 providing in general for reasonable health regulations by local boards of health; and § 127 authorizing regulations specifically relating to house drainage. In adopting its regulations the town's board of health was not required to state the source of its authority and the regulations were not rendered invalid by the reference to § 31. They were authorized under either or both statutes. See also § 122.

The second contention poses the question of the reasonableness of the standards applying to cesspools. Cesspools have been used from early times as a means of disposing house drainage. They are commonly built of field stone or other material through the interstices of which water in

the drainage seeps and gradually is absorbed in the surrounding ground. The solid content of the drainage settles to the bottom of the cesspool and must periodically be removed. The proper functioning of a cesspool depends on the expert laying of the walls and the absorbent qualities of the surrounding soil.

The regulations as to cesspools are found in § 7 under the classification "[a]ll sewage disposal works." It is provided that they be located at certain distances from dwellings, streams, streets, passageways, and adjoining lots; that they be of approved material and design and be equipped with safe and suitable removable covers. Overflow cesspools may be entirely covered with earth.

We perceive no unreasonable failure to make further specifications. The principles for guiding landowners are adequately stated with as much certainty as the nature of the subject matter reasonably permits. *Building Commr. of Medford* v. *C. & H. Co.* 319 Mass. 273, 281–282. The proper construction of cesspools depends peculiarly on conditions of soil and the nature of the material used in the walls. The landowner is warned by § 5 that no cesspool shall be constructed or installed until a permit has first been obtained and that he shall have such construction inspected by the board of health or its agent before it is covered (§ 8). These are valid precautionary regulations to avoid future danger to health by improper methods of sewage disposal. *Commonwealth* v. *E. E. Wilson Co.* 241 Mass. 406, 410.

There is a matter of evidence to be considered. The defendant John F. Crystoff testified on direct examination that he owned sixteen buildings in Holden and previously had occasion to discuss with the board the applicability of these by-laws (regulations) to additions which he was making to existing sewer systems. He was asked by his counsel what those discussions were, counsel stating they were offered "simply as a construction put on these by-laws by the parties themselves." The question was excluded subject to the defendants' exception. There was no error.

The judge said counsel might ask for the talk about the present construction but not in reference to other times and places. No basis was laid for the rule stated in the *Powers's Case,* 275 Mass. 515, 518, that "the long continued and uniform practice" of an agency charged with the administration of an ambiguous or doubtful statute is entitled to great weight. See *Mullen* v. *Board of Sewer Commrs. of Milton,* 280 Mass. 531, 536.

The final decree should be modified by adding provisions that the corporate defendant uncover or permit the board to uncover the overflow cesspool that it may be inspected and that the corporate defendant seek to obtain a permit for its installation. The decree should further provide that the bill be dismissed as to the individual defendants without costs. As so modified the decree is affirmed.

*So ordered.*