ELIZABETH MOYSENKO & another vs. BOARD OF HEALTH
OF NORTH ANDOVER & another.

Essex.    March 3, 1964. — April 10, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Health, Board of. Public Health. Piggery. Nuisance.*

A general regulation of the board of health of a town prohibiting the keeping of piggeries within the town was valid under G. L. c. 111, § 143, and was enforceable against a certain piggery although the board adopted the regulation and issued an order of prohibition under § 146 against that piggery without investigation or knowledge of conditions and methods of operation at that piggery and it was not offensive to the neighborhood.

PETITION filed in the Superior Court on January 30, 1961, to have a jury annul an order of the respondent board of health and assess damages.

The case was tried before *Smith,* J.

*Salvatore J. Basile (Norman M. Shack* with him) for the petitioners.

*Arnold H. Salisbury,* Town Counsel, for the respondents.

REARDON, J.    On February 24, 1960, the board of health of North Andover (the board) adopted after a public hearing, to be effective on January 1, 1961, substantially the same regulations[1] relative to the keeping of pigs which we considered in *Cochis* v. *Board of Health of Canton,* 332 Mass. 721, and in *Board of Health of Franklin* v. *Hass,* 342

[1] "Section 1. No person, firm or corporation shall keep a piggery within the Town of North Andover. The keeping of four or more pigs at any one time shall constitute a piggery.

"Section 2. No person shall keep a pig within 25 feet of any dwelling or tenement owned or occupied by any person other than his own family. No person shall keep two or more pigs within 50 feet of any dwelling or tenement owned or occupied by any person other than his own family.

"Section 3. Any person keeping one or more pigs, upon receipt of notice in writing from the Board of Health that such keeping of pigs has been found to be a nuisance, shall remove the pigs from his premises within reasonable time specified in the notice."

Mass. 421. On January 27, 1961, the petitioners, Elizabeth and her son, Constantino Moysenko, were served with an order of prohibition under G. L. c. 111, § 146, directing them to cease operating a piggery upon certain designated premises in the town (the premises). The Moysenkos seasonably filed this petition under G. L. c. 111, § 147, to have a jury annul the board's order and assess damages. G. L. c. 111, §§ 149, 150.

The jury could have found the following facts. Since 1932 Constantino has kept from time to time between fifty and one hundred hogs on the premises. On January 27, 1961, they numbered seventy-four and were being fed in accordance with legal standards. The premises, owned by Elizabeth, were a farm of about fifty-two acres situated in a district zoned for agriculture and surrounded by other farms. Constantino paid a rental for the use of the premises. The place where the hogs were kept was approximately 1,200 feet away from the public road and not near any houses. Persons living in the neighborhood were never bothered by any odors emanating from the piggery and never had occasion to know of any impropriety in its maintenance. No complaints about it were ever made to a public official. The board never investigated nor made any effort to investigate conditions at the piggery and knew nothing about them. When State health officers visited, they always found the premises fit and satisfactory for the operation of a piggery. The sole reason for the issuance of the regulations and order of prohibition was because the board wanted no pigs in the town.

At the close of the evidence the petitioners requested that the jury be given the following instruction: "If you find that the members of the [b]oard . . . issued this order against the petitioners without investigating the . . . premises or without having any knowledge of the method of operation of the petitioners' piggery, you are warranted in finding the issuance of said order under these circumstances was unreasonable and arbitrary as to the petitioners . . . , and you have a right to annul or alter the said order." The

judge refused to give the instruction and an exception was taken. The jury affirmed the order of the board.[2] The petitioners are here on a substitute bill of exceptions. The sole issue is whether the refusal to grant the above instruction was proper.

The order of prohibition by its terms was based upon § 1 of the board's regulations: "No person, firm or corporation shall keep a piggery within the Town . . . . The keeping of four or more pigs at any one time shall constitute a piggery." The enabling statute is G. L. c. 111, § 143: "No trade or employment which *may* result in a nuisance or be harmful to the inhabitants, injurious to their estates, dangerous to the public health, or *may* be attended by noisome and injurious odors shall be established in a . . . town except in such a location as may be assigned by the board of health thereof . . . , and such board of health may prohibit the exercise thereof within the limits of the . . . town . . ." (emphasis supplied).

We are of opinion that the board had no duty to acquire any knowledge as to the operation of the Moysenko piggery before adopting the regulations. We have already held valid regulations differing in no material respect. *Cochis* v. *Board of Health of Canton,* 332 Mass. 721, 724. *Board of Health of Franklin* v. *Hass,* 342 Mass. 421, 422. "[A]bsolute statutory power to prohibit piggeries . . . exists most clearly under" G. L. c. 111, § 143. *Board of Health of Woburn* v. *Sousa,* 338 Mass. 547, 552. *Board of Health of Franklin* v. *Hass, supra,* 423.

The board under § 143 need not give individual attention to each piggery before adopting a regulation. "[A]n order of the board of health, under the Gen. Sts. c. 26, § 52 [a predecessor of § 143], is not in the nature of an adjudication of a particular case, but of a general regulation of the trade or employment mentioned therein." *Taunton* v. *Tay-*

---

[2] "The verdict may alter, affirm or annul the order, and shall be returned to the court for acceptance; and if accepted, shall have the authority and effect of a valid order of the board, and may also be enforced by the court in equity." G. L. c. 111, § 149.

*lor*, 116 Mass. 254, 261.  *Cochis* v. *Board of Health of Canton, supra,* 724–725.  The board "is empowered by § 143 to prohibit the exercise of the trade or employment as a whole whenever by any of the methods employed it has become or may become a nuisance or otherwise offensive as set forth in the statute."  *Board of Health of Wareham* v. *Marine By-Products Co.* 329 Mass. 174, 178.  In regulating an occupation a board may not act in "an unreasonable, arbitrary, whimsical, or capricious manner."  *Butler* v. *East Bridgewater,* 330 Mass. 33, 38.  But under § 143 an entire occupation may be prohibited if "it is conceivable that there might be circumstances where . . . [the exercise of that occupation] might become . . . [a nuisance]."  *Waltham* v. *Mignosa,* 327 Mass. 250, 252.  Clearly "the trade or employment need not in fact be a nuisance or attended by noisome and injurious odors before the power of prohibition arises."  *Id.*  We think it within the realm of common knowledge that some piggeries may be attended by noisome and injurious odors.  See *Pendoley* v. *Ferreira,* 345 Mass. 309, 312.  See also *Board of Health of Wareham* v. *Marine By-Products Co., supra,* 177.  Therefore, no investigation is necessary to establish such a possibility, and a board would be reasonable in not making one.[3]

The board properly adopted the regulations without knowledge of conditions at the petitioners' piggery.  Without question § 1 of the regulations authorized the issuance of the order of prohibition.

*Exceptions overruled.*

---

[3] The bill of exceptions does not state that no investigation preceded adoption of the regulations but only that there was no investigation of the Moysenko piggery.