BOARD OF HEALTH OF FRANKLIN & another *vs.* JOHN R. HASS & others.

Norfolk.   February 7, 1961. — April 7, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Health, Board of. Public Health. Piggery. Nuisance. Equity Jurisdiction,* Health order. *Constitutional Law,* Assertion of constitutional rights, Health order, Due process of law. *Equity Pleading and Practice,* Parties.

A suit in equity which a local board of health is authorized to institute in behalf of its municipality should be brought in the name of the municipality.   [421]

A proprietor of a piggery who was served with an order by the local board of health under G. L. c. 111, § 143, prohibiting operation of the piggery, and who petitioned the Superior Court for a jury trial under § 147, but neither complied with the order nor applied to the board for special authority under § 148 to continue operation of the piggery, so that his petition was dismissed, was not in a position to assert that the order of prohibition and the procedure in §§ 147–150 on the petition for jury trial deprived him of constitutional rights.   [424–425]

The provision of G. L. c. 111, § 143, for an order by a board of health prohibiting a noxious trade and the provisions of §§ 147–150 relating to proceedings upon a petition for a jury trial are not unconstitutional on their face.   [425–426]

G. L. c. 111, § 125A, inserted by St. 1958, c. 469, providing for review by a District Court of an order by a board of health for abatement of a nuisance under § 123 is inapplicable to an order prohibiting the exercise of a noxious trade under § 143.   [426]

After an order by a board of health under G. L. c. 111, § 143, prohibiting the operation of a piggery had been served on its proprietor and he had petitioned the Superior Court for a jury trial pursuant to § 147, but his petition had been dismissed under § 148 for failure either to comply with the order or to secure special authority from the board to continue operation of the piggery, the order became final and was enforceable in a suit in equity by the municipality against the proprietor.   [426]

BILL IN EQUITY, filed in the Superior Court on May 5, 1959.

The suit was heard by *Smith, J.*

*Richard K. Martin,* for the defendants.

*Harry J. Webb,* for the plaintiffs.

CUTTER, J.   This is a bill in equity brought (see G. L. c. 111, § 187) by the board of health of Franklin[1] (the board)

---

[1] The bill, as the trial judge ruled, should have been brought in the name of the town. *Board of Health of Woburn* v. *Sousa,* 338 Mass. 547, 548.

and by the town of Franklin on May 5, 1959, to enjoin the defendants from using certain land for the purposes of a piggery and to require them to remove all pigs. The facts are stated as agreed by the parties.

In September, 1956, the defendants John and Joseph Hass (the lessees) leased from another defendant, Garelick, about fifty-four acres of land (the locus) upon which a piggery had been conducted since about 1930.

The board adopted rules and regulations, in precisely the language (apart from the name of the town) of the regulations held to be valid in *Cochis* v. *Board of Health of Canton,* 332 Mass. 721, 722, 724. These regulations forbade any piggery within Franklin. A piggery was defined as the "keeping of four pigs or more at any one time." On June 22, 1957, the board caused a copy of the rules and regulations to be served upon the lessees, together with an order under G. L. c. 111, § 143, as amended through St. 1956, c. 275, § 1, dated June 21, 1957, stating that the business of raising pigs conducted upon the locus had been found to be a nuisance and directing removal of the pigs prior to July 25, 1957. The constant average number of pigs maintained on the locus varies from 2,500 to 4,000 and the annual gross volume of the business varies from $250,000 to $500,000. The piggery is located in a rural area. In 1944, prior to the lease to the lessees, residents of Franklin asked the county commissioners to abate the nuisance but the commissioners declined to act.

Upon receipt of the order, a petition for a jury trial in accordance with G. L. c. 111, § 147 (as amended by St. 1948, c. 480, § 2), was filed in the Superior Court on June 25, 1957. A motion to dismiss this petition was allowed, because it appeared that the lessees and Garelick had not complied with the board's order pending the decision of the petition (see G. L. c. 111, § 148, quoted *infra*). An appeal was taken to this court, but was not seasonably perfected. This court refused to allow the appeal to be entered late (see G. L. c. 211, § 11, as amended by St. 1933, c. 300, § 1; since amended by St. 1960, c. 207, § 1) on the ground that "no

meritorious question of law . . . [was] presented.'' Gare-
lick was an intervener in that earlier proceeding. The
board has never given to the lessees or Garelick ''a trial,
hearing or conference, concerning the . . . operation of
the'' piggery. The lessees and Garelick ''have never had a
hearing or trial in any court . . . on the merits . . . of the
contention . . . that the . . . [piggery] constitutes a nuisance,
or is attended by noisome odors, or is injurious to the public
health and welfare.''

The trial judge ruled, among other things, (1) that the
board's rules and regulations were valid; (2) that the board
was empowered to adopt them without notice to the lessees
or granting them a hearing, a view clearly warranted by
*Revere* v. *Blaustein,* 315 Mass. 93, 95; (3) that the board's
action was not arbitrary or capricious; (4) that enforce-
ment of the board's order does not violate either the Fed-
eral or the State Constitution; and (5) that the lessees' and
Garelick's refusal ''to obey the order of prohibition pending
their appeal . . . for a jury trial, precluded . . . [them]
from showing in this suit that their business was not a
nuisance or that the board was not acting in good faith.''
From a final decree permanently enjoining the lessees and
Garelick ''from using the . . . [locus] for the purpose of
. . . a piggery'' and directing that ''they remove all pigs
. . . within thirty days,'' the lessees and Garelick appealed.

The somewhat overlapping statutes permitting any board
of health to regulate and to prohibit piggeries have recently
been discussed in *Board of Health of Woburn* v. *Sousa,* 338
Mass. 547. There (at p. 552) it was pointed out ''that abso-
lute statutory power to prohibit piggeries . . . exists most
clearly under'' G. L. c. 111, § 143 (as amended through St.
1956, c. 275, § 1).[2] This section and its predecessors have
been construed as authorizing complete prohibition of ''the
employment of keeping swine.'' See *Commonwealth* v.

---

[2] Section 143 reads, ''No trade or employment which may result in a nui-
sance or be harmful to the inhabitants, injurious to their estates, dangerous
to the public health, or may be attended by noisome and injurious odors shall
be established in a . . . town except in such a location as may be assigned by
the board of health thereof after a public hearing has been held thereon . . .
and such board of health may prohibit the exercise thereof within the limits of
the . . . town or in places not so assigned, in any event. . . .''

*Young,* 135 Mass. 526, 529; *Cochis* v. *Board of Health of Canton,* 332 Mass. 721, 722–724. As was said in *Board of Health of Wareham* v. *Marine By-Prod. Co.* 329 Mass. 174, 177, under § 143, "it is not necessary that the [prohibited] trade shall actually be a nuisance or offensive. It is enough if it '*may* be attended by noisome . . . odors' . . . . It does not require much imagination to assume that any business of manufacturing fish meal and fish oil 'may be attended by noisome . . . odors.'" This last observation certainly applies even more strongly to the noisome odors likely to be produced by an assemblage of 2,500 to 4,000 swine, as in the present case. See *Waltham* v. *Mignosa,* 327 Mass. 250, 252. It is not at all strange that the existence of a large piggery in this growing community has led its board of health to exercise its prohibitory powers.

Action by the board under § 143 was necessarily in accordance with the requirements of related sections. The order of prohibition was duly served as provided in G. L. c. 111, § 146. Thereafter the lessees' and Garelick's appeal under § 147 (as amended through St. 1948, c. 480, § 2)[3] failed by reason of the last sentence of § 148. The lessees' and Garelick's principal contention is that the remedy under § 147 and the related §§ 148–150 is inadequate,[4] in that, in order to prosecute his appeal under § 147, the piggery proprietor, under § 148, must comply with the order pend-

---

[3] Section 147, as amended, reads, "Whoever is aggrieved by an order made under section one hundred and forty-three . . . may, within three days after service of the order upon him, give written notice of appeal to the board . . . and file a petition for a jury in the superior court in the county where the premises affected are located, and, after notice to the board . . . may have a trial in the same manner as other civil cases are tried by jury. . . ."

[4] These sections read, "Section 148. Such trade or employment shall not be exercised contrary to the order while such proceedings are pending, unless specially authorized by the board; and if so specially authorized all further proceedings by the board shall be stayed while such proceedings are pending. Upon any violation of the order, unless specially authorized as aforesaid, the proceedings shall forthwith be dismissed. Section 149. The verdict may alter, affirm or annul the order . . . and if accepted, shall have the authority and effect of a valid order of the board, and may also be enforced by the court in equity. Section 150. If the order is affirmed by the verdict, the board shall recover costs to the use of the town; if it is annulled and the petitioner has not been specially authorized by said board to exercise such trade or employment during the proceedings, he shall recover damages and costs against the town; if it is annulled and the petitioner has been specially authorized as aforesaid, or if it is altered, he shall not recover damages, and the court may render judgment for costs in its discretion."

ing the jury trial unless "specially authorized by the board" to do otherwise. Even though § 150 gives "damages and costs against the town" to a petitioner not specially authorized to continue the prohibited employment pending the trial, the lessees and Garelick contend that §§ 147-150 deny them their constitutional rights.

So far as this record shows, the lessees and Garelick have simply failed to prosecute completely and successfully their statutory remedy. The agreed facts do not show that they ever applied to the board under § 148 for special authorization to continue the piggery pending the appeal. They thus did not exhaust a possible administrative remedy for staying the operation of the board's order pending its court review. In view of the provision of § 150 allowing damages in the event that the board's order is annulled, a board obviously has a strong inducement to be liberal in granting special authorizations. The lessees and Garelick also have neither contended nor shown that a board decision denying special authorization could not have been reviewed by certiorari under G. L. c. 249, § 4 (as amended through St. 1953, c. 586, § 1), or otherwise (see *DiMaggio* v. *Mystic Bldg. Wrecking Co. Inc.* 340 Mass. 686, 691) or that, in connection with such a certiorari proceeding, a judicial stay of enforcement of the order would not be granted in appropriate cases of hardship. They are not now in a position to assert that § 148 deprives them of an adequate remedy, and of their constitutional rights, where they have not used all the statutory provisions available for their protection. In any event, they would have been entitled to damages in accordance with § 150 for the deprivation by the order of use of the piggery for the period of the appeal if the order had been annulled by the jury verdict. We, of course, need not now define precisely the term "damages" used in § 150. We think, however, that, when the occasion arises, the word must be interpreted broadly enough to satisfy at least minimal constitutional requirements of just compensation for any such wrongful deprivation.

In the light of these considerations, § 143 and §§ 146-150 are not invalid on their face. See *Flynn* v. *Board of Reg-*

*istration in Optometry,* 320 Mass. 29, 33–34. As has been indicated above, the conduct of an inherently noxious and offensive trade like this large scale piggery can be prohibited as an enterprise normally causing serious injury and offense to the owners of neighboring properties. Sections 147–150, however, fall short of absolute prohibition, in that they provide persons claiming to be injured by a specific prohibition or by a particular application of a general regulation or prohibition with a judicial review of an order issued under § 143 upon condition of their compliance with the order pending the review. The safeguards already mentioned, allowing a discretionary stay of the prohibition or damages, at least satisfy, and may exceed, what is constitutionally required. See *DiMaggio* v. *Mystic Bldg. Wrecking Co. Inc.* 340 Mass. 686, 691–692. The condition that there must be compliance with the order pending review is valid. Because the lessees and Garelick did not comply with this valid condition and completely prosecute their statutory remedy in accordance with its terms, they are now precluded from showing that the prohibitory order was invalid in its application to them. See *Swansea* v. *Pivo,* 265 Mass. 520, 523; *Revere* v. *Blaustein,* 320 Mass. 81, 83.

The lessees and Garelick somewhat vaguely argue that the interpretation of § 143 and §§ 146–150 should be modified by reason of the enactment of G. L. c. 111, § 125A, inserted by St. 1958, c. 469. This section provides for review in the District Court of an order, under § 122, § 123, or § 125, abating a nuisance, and contains a provision that "the operation of said order shall be suspended, pending the order of the court." Section 125A by its own terms applies only to orders under the sections therein mentioned and not to orders under § 143. It is irrelevant in this case.

The board's order to cease the operation of the piggery and to remove the pigs has become final. The town is entitled to specific enforcement of it under G. L. c. 111, § 187. The final decree is affirmed. The town is to have costs of this appeal.

*So ordered.*