Cowin, J.
This matter is before the Court on plaintiffs’ motion for injunctive relief pursuant to both G.L.c. 214, §7A and the common law of nuisance. Plaintiffs are thirty-eight residents of the City of Marlborough (“Marlborough”) who seek to enjoin operation of a sewage sludge composting facility at the City’s Easterly Wastewater Treatment Plant (“Easterly WWTP”). For the reasons set forth below, plaintiffs motion is allowed.
BACKGROUND
OnFebruaiy 9,1995, a hearing was held on plaintiffs motion. Based upon oral argument and the written submissions of the parties, the plaintiff has a reasonable likelihood of establishing the following facts.
In 1986, the Commonwealth of Massachusetts (the “Commonwealth”) filed suit against Marlborough alleging violations of federal and state environmental laws because of discharge of certain pollutants from the Westerly Wastewater Treatment Plant (“Westerly WWTP”) into the Assabet River. As a result of an agreement for judgment in that suit, Marlborough constructed a sewage sludge composting facility at the Easterly WWTP which was completed in 1989. Marlborough now transports sludge from the Westerly WWTP to the Easterly WWTP for composting. Marlborough also has an agreement with the Town of Northborough (“Northborough”) to accept Northborough’s waste at the Westerly WWTP. This waste is also transported to the Easterly WWTP for composting.
Soon after the construction of the composting facility in 1989, Marlborough began receiving complaints about offensive odors coming from said facility. As a result, Marlborough hired an environmental engineering firm to study the problem. The engineer’s report indicated that the composting facility causes an odor which fluctuates in intensity based upon environmental conditions. Marlborough has appropriated $250,000.00 for the design of a biofiltration system, and has pursued state and federal funding for its eventual construction. The design is due to be completed by April ,1995. This is six months later than the date originally scheduled for completion of design. The date initially set for completion of construction was October, 1995. Due to delays already encountered, this date also appears unattainable. All of the City’s interim attempts to alleviate the odors prior to the completion of the biofiltration system have failed.
It is undisputed that the plaintiffs all live in close proximity to the Easterly WWTP. Some of the plaintiffs live in homes built and purchased at approximately the same time as the composting facility was put into operation; others moved into the area at a later date. The affidavits allege offensive and pervasive odors which odors are particularly evident on warm and humid days, allegations include being awakened from sleep with nauseating odors, “gagging” reactions, an inability to enjoy outdoor activities, and having to close windows and doors even on hot days to avoid the smell.
The plaintiffs seek an order compelling Marlborough to truck the sludge to an alternative location and permitting Marlborough to reopen the Easterly WWTP composting facility only if and when the odors are eliminated. As required by G.L.c. 214, §7A, notice of the plaintiffs’ action was given to Marlborough, the Massachusetts Department of Environmental Protection (“DEP”) and the Attorney General.
Marlborough opposes any injunctive relief, arguing that the odors do not rise to the level of a nuisance, and that even if they do, some of the plaintiffs came to the area after the compost facility was operational and the odor problem known. In addition, Marlborough maintains that the balance of the equities is in its favor because trucking the sludge to an alternate site would cost the city approximately $700,000.00.[2]
Finally, Marlborough contends that the plaintiffs have failed to join three indispensable parties: Northborough, the Commonwealth, and the U.S. Environmental Protection Agency (“EPA”). Marlborough has requested an evidentiary hearing on this matter. After reviewing the papers submitted and hearing lengthy oral argument, I find such a proceeding unnecessary. The party’s submissions provide ample basis for the Court’s decision.[3]
DISCUSSION
The plaintiffs seek injunctive relief on two separate and distinct bases: G.L.c. 214, §7A and common law nuisance. G.L.c. 214, §7A empowers the Superior Court to enjoin damage to the environment as long as certain prerequisites are met. The Court also has general equitable powers to enjoin nuisance. G.L.c. 241, §§1, 5.
In considering a motion for injunctive relief, “the judge initially evaluates in combination the moving party’s claim of injury and chance of success on the *380 merits.” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party." Id. A preliminary injunction may properly issue “(o]nly where the balance between these risks cut[s] in favor of the moving party.” Id. If the dispute is not between private parties, the judge should consider the risk of harm to the public interest, in addition to the principles set forth in the Packaging Industries case. Biotti v. Bd. of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988); Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984).
Damage to the environment under G.L.c. 214, §7A
To obtain equitable relief under G.L.c. 214, §7A, the plaintiffs must show that (1) Marlborough’s operation of the compost facility is causing or is about to cause damage to the environment, and (2) that such damage is a violation of a statute, ordinance, by-law or regulation whose major purpose is to prevent or minimize damage to the environment. Boston Investments Limited v. Secretary of Environmental Affairs, 35 Mass.App.Ct. 391, 395 (1993).[4]
G.L.c. 214, §7A defines “damage to the environment” to include “air pollution.” The DEP defines air pollution as:
the presence in the ambient air space of one or more air contaminants or combinations thereof in such concentrations and of such duration as to:
a. cause a nuisance
b. be injurious, or be on the basis of current information, potentially injurious to human or animal life, to vegetation, or to properly; or
c. unreasonably interfere with the comfortable enjoyment of life and property or the conduct of business.
310 C.M.R. §7.00. The regulations further define “air contaminants” to include “odors,” which are defined as “that property of gaseous, liquid, or solid materials that elicits a physiologic response by the human sense of smell.” Id.
G.L.c. Ill, §142A directs the DEP to promulgate “regulations to prevent pollution or contamination of the atmosphere.” The Air Pollution Control regulations above discussed, and codified in 310 C.M.R. 7.00 et seq., were issued pursuant to that statutory authority for the purpose of preserving the “highest possible quality of the ambient air compatible with [the] needs of society.” 310 C.M.R. 7.00. It is clear that the major purpose of both G.L.c. Ill, §142A and these regulations is to prevent or minimize damage to the environment.
Applying the traditional tests for granting an injunction, the plaintiffs have shown a reasonable likelihood of success on the merits. The plaintiffs have submitted sufficient evidence to establish that a nuisance exists, and/or that the odors emitted by the composting facility unreasonably interfere with the comfortable enjoyment of their property. See discussion of nuisance, infra. Therefore, the plaintiffs have established a reasonable likelihood of proving that Marlborough’s current operation of the facility causes “damage to the environment" within the meaning of G.L.c. 214, §7A. The plaintiffs have also demonstrated a reasonable likelihood of success with respect to their burden of showing that such damage is a violation of a statute and regulation whose major purpose is to prevent or minimize damage to the environment.[5]
Furthermore, the balance of the equities in this case favors the plaintiffs. The plaintiffs have shown that they suffer significant, irreparable harm from the odors. The plaintiffs are powerless to correct the problem, short of leaving their homes and community. The Court also gives substantial weight to the fact that the injury to Marlborough is economic, whereas the injury to plaintiffs is the material interference in the day-today use and comfort of the places where they live. See Pendoley v. Ferreira, 345 Mass. 309, 314 (1963). Even though the cost of the remedy is admittedly high, the Court “is not required to balance the cost to a public defendant of an injunction which eliminates the nuisance . . . because the public defendant is always free to limit its costs by... exercise of the power of eminent domain.” Schleissner v. Town of Provincetown, 11 Mass.App.Ct. 392, 394 (1989). In any event, it would cost Marlborough far less to remedy the problem than to buy the homes affected by the odor.
The plaintiffs thus have shown a likelihood of success on the merits and that the balance of the equities is in their favor. Injunctive relief is appropriate under G.L.c. 214, §7A.
Common Law Nuisance
“A private nuisance is actionable when a property owner creates, permits, or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and enjoyment of the property of another.” Asidla v. Fitchburg, 24 Mass.App.Ct. 13, 17 (1987). Where the existence of a nuisance is established, the plaintiff is entitled to injunctive relief. Proulx v. Basbanes, 354 Mass. 559, 561-62 (1968). Like a private entity, a municipality “may be enjoined from making use of land owned or controlled by it in a way which is offensive to persons of ordinary sensibilities occupying neighboring property, or which unreasonably diminishes the value to property owned by others.” Lenari v. Kingston, 348 Mass. 355, 358 (1965).
The plaintiffs have established a likelihood of success on the merits of their nuisance claim. The plaintiffs suffer significant, pervasive interference in the *381 conduct of their normal daily lives. It is also noteworthy that the composting process which causes the odors could be moved without impacting the City’s ability co accept and treat waste at the Easterly WWTP.[6] See Malm v. Dubrey, 325 Mass. 63, 66-67 (1949) (evidence admissible in nuisance action to demonstrate the extent to which the acts complained of are unnecessary for the conduct of the business). The fact that some of the plaintiffs moved to the area after the facility was operational is a factor for consideration, but it does not bar relief. Escobar v. Continental, supra at 110. See also Pendoley v. Ferreira, supra.
The Court finds that the plaintiffs are likely to prevail in proving that the current operation of the composting facility constitutes a substantial, unreasonable interference with the plaintiffs’ use and enjoyment of their property. As discussed earlier, the balance of the equities is also in the plaintiffs’ favor. Therefore, injunctive relief is also appropriate on the basis of common law nuisance.
Indispensable Parties
Marlborough also contends that Northborough, the Commonwealth and the EPA are indispensable parties to this action. A party is indispensable if in his absence complete relief cannot be accorded among those already parties, or he claims an interest in the action and is so situated that the disposition of the action in his absence may impair his ability to protect that interest, or leave any of the persons already parties subject to risk of incurring multiple or otherwise inconsistent obligations. Mass.R.Civ.P. 19(a).
Marlborough argues that, since the Ciiy is contractually obligated to accept waste from Northborough, any order enjoining operation of the plant would cause Marlborough to breach that agreement. On this basis, Marlborough posits that Northborough has an interest in this action and must be joined. Northborough is not an indispensable party to this action. The granting of injunctive relief in this case would not prevent Marlborough from honoring its contractual obligation to accept and treat waste from Northborough. If an injunction is issued, Marlborough would simply be forced to compost the waste from both towns in a manner which does not create a nuisance. As a practical matter, Northborough’s ability to protect its interest in Marlborough’s acceptance and treatment of its waste is not impaired by the present action. Further, one does not become an indispensable party simply because one is a party to a contract. There is no right to performance of an illegal contract. In addition, Northborough had sufficient notice of this action to seek to intervene or have its interests represented in some manner.[7]
Marlborough contends that the Commonwealth is another indispensable party because it was a party to the 1986 agreement for judgment. However, as required by G.L.c. 214, §7A, the Attorney General’s Office was provided notice of this action. Furthermore, plaintiffs represented to the Court at oral argument that plaintiffs’ counsel had contacted the Attorney General’s Office and was told that the Attorney General’s Office did not consider the Commonwealth an indispensable party to this action because the agreement for judgment had expired in April, 1990, and the subject matter of the agreement concerned river pollution, not the operation of the composting facility. The Court concludes that the Commonwealth is not an indispensable party. In addition, the Commonwealth has had ample notice of the pendency of this motion to assert any interest and has not done so.[8]
Finally, Marlborough claims that the EPA is a necessary party because the EPA conditioned a grant to Marlborough to help build the composting facility upon Marlborough’s acceptance of Northborough’s waste. The Court concludes that the EPA is not an indispensable party because whatever interest it might have in this action is not jeopardized by the granting or denial of injunctive relief. As stated earlier, an injunction does not prevent Marlborough from accepting and treating Northborough’s waste in accordance with their contractual obligations. Further, Marlborough had ample opportunity to request that a representative from the EPA argue that they were a necessary party. There is no indication Marlborough has done so.
This decision represents a significant constraint on the executive branch and imposes substantial costs upon the City of Marlborough. For these reasons, fairness dictates that Marlborough is entitled to request an immediate trial. This Court will make eveiy effort to accommodate such a request.[9]
ORDER
For the foregoing reasons, it is hereby ORDERED that a preliminary injunction issue prohibiting the operation of the sludge composting facility at the Easterly Wastewater Treatment Plant until such time as the facility is capable of functioning without emitting nuisance odors. It is further ORDERED that the Court, to the extent possible, will accede to the request of the City of Marlborough for an immediate trial date.

Although it is unclear from the papers submitted, it is assumed that this is an annual figure.

The City has also raised the argument that G.L.c. 260, §2B bars any claim for tort damages in this case. However, this argument is misplaced as the plaintiffs have not filed an action in tort.

G.L.c. 214, §7A states in pertinent part: “[t]he superior court for the county in which damage to the environment is occurring or is about to occur may, upon civil action in which equitable or declaratory relief is sought in which not less than ten persons domiciled within the commonwealth are joined as plaintiffs ... determine whether such damage is occurring or is about to occur and may, before final determination of the action, restrain the person from causing or about to cause such damage; provided . . . that the damage . . . constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment.” The first paragraph of the statute defines damage to the environment to mean “any destruction, damage or impairment, actual or probable, to any of the natural resources of the commonwealth . . . Damage to the environment shall include ... air pollution . . .”

Defendants contend that some of the plaintiffs may lack standing. Assuming without deciding that G.L.c. 214, §7A contains an implicit standing requirement, the affidavits of the plaintiffs satisfy traditional standing requirements.

The City did not dispute either at oral argument or in their written submission that the composting process could be moved to an alternate site, independent of the treatment process. Rather, the thrust of the City’s argument was that the cost of such a move would be prohibitive.

Indeed, the defendants indicated at oral argument on this motion that a representative from Northborough was present to offer evidence if it were needed.

In order to accommodate various schedules, the hearing on the motion for injunctive relief was not held until more than a month after it had been filed.

G.L.c. 214, §7A also provides for speedy trial of an action brought pursuant to that section.