TOWN OF SEEKONK & another *vs.* ANTHONY NUNES ·
& others.

Bristol.   May 16, 1974. — June 6, 1974.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Dump.*

A large tract of land on which, on the effective date of St. 1955, c. 310, was operated a commercial piggery where the pigs were fed edible garbage from restaurants was not then being used as a "dumping ground" within § 2 of the 1955 statute and was not to "be deemed [within § 2] to have been assigned under" G. L.

c. 111, § 150A, although the operator of the piggery was required by the arrangements with the restaurants to take their nonedible refuse along with their edible garbage and the nonedible refuse was dumped on a part of the tract and was there periodically burned or buried; such handling of the nonedible refuse was merely incidental to the operation of the piggery. [341-343]

BILL IN EQUITY filed in the Superior Court on April 5, 1971.

The suit was heard by *Cross,* J.

*Philip A. Rollins* (*Charles S. McLaughlin, Jr.,* with him) for the defendants.

*Max Volterra* for the plaintiffs.

HALE, C.J.   This is an appeal from a final decree of the Superior Court which, in effect, permanently enjoined the defendants from using certain land belonging to them (the locus) in the town of Seekonk for the dumping of refuse.   The judge entered "Findings of Fact, Rulings of Law and Order for Decree."   He adopted the findings made therein as his report of material facts (G. L. c. 214, § 23).

The sole issue for our decision is whether the locus, not having been assigned by the board of health for use as a refuse dump (sanitary land fill) pursuant to G. L. c. 111, § 150A,[1] may be so used through the operation of the

---

[1] General Laws c. 111, § 150A (as inserted by St. 1955, c. 310, § 1, and as amended through St. 1970, c. 839), provides in relevant part: "As used in this section, 'facility' means a sanitary landfill, a refuse transfer station, a refuse incinerator with a grate area in excess of ten square feet, a refuse composting plant, a dumping ground for refuse or any other works for treating or disposing of refuse; and 'refuse' means all solid or liquid waste materials, including garbage and rubbish, but not including sewage.

"No place in any city or town shall be established or maintained or operated by any person, including any political subdivision or agency of the commonwealth, as a site for a facility, unless such place has . . . been assigned by the board of health of such city or town as a site for a facility after a public hearing, subject to the provisions of any ordinance or by-law adopted therein under chapter forty A or corresponding provisions of earlier laws . . . ."

The amendment to this section effected by St. 1973, c. 1217, § 6, is not material to this case.

"grandfather clause" of St. 1955, c. 310, § 2.[2]   Stated in another way, the question is whether on the effective date of St. 1955, c. 310, § 1 (July 24, 1955), the locus was being used as a dumping ground within the meaning of the act.

We agree with the judge that it was not.   The judge found in part on agreed facts and in part on the evidence that the locus had been used by previous owners for the purpose of operating piggeries and that the entire locus, except for two small lots, was used for the operation of a commercial piggery on the effective date of the 1955 act. When the locus was used as a piggery the operator contracted with restaurants to buy their edible garbage. As a condition of the contracts the operator was required to pick up the restaurants' non-edible refuse as well. Each load was then trucked onto the locus.   Once there, the edible material was separated and fed to the pigs.   The non-edible material was dumped on another part of the locus and periodically burned or buried with soil.   The entire operation was carried on under an assignment issued pursuant to G. L. c. 111, § 143, as amended, providing for the assignment of locations to carry on certain noisome trades.

It is apparent to us that the use of the locus on the critical date and for a long time prior thereto was for the operation of a commercial piggery and that any refuse brought onto the locus which was not used as pig feed was brought there incident to the operation of the piggery.[3]   No rubbish was brought onto the locus except in

---

[2] "Any place in use as, or publicly held or licensed for use as, a dumping ground for garbage, rubbish or other refuse or as a site for a refuse disposal incinerator on the effective date of this act shall be deemed to have been assigned under section one hundred and fifty A of chapter one hundred and eleven of the General Laws, but such assignment may be rescinded, suspended or modified in like manner as an assignment made under said section one hundred and fifty A, as appearing in section one of this act."

[3] It appears from the record that the use of the locus as a piggery has been discontinued.

connection with the edible refuse. The non-edible material, of course, had to be and was disposed of in the manner found by the judge. We are of the opinion that the defendant cannot "boot strap" such an incidental use into a commercial land fill disposal area (of over one hundred acres) without first obtaining an assignment of the locus for that purpose pursuant to G. L. c. 111, § 150A. See *Lexington* v. *Bean,* 272 Mass. 547, 553 (1930); *Burlington* v. *Dunn,* 318 Mass. 216, 223 (1945), cert. den. 326 U. S. 739 (1945); *Bridgewater* v. *Chuckran,* 351 Mass. 20, 23 (1966). Cf. *Building Commr. of Medford* v. *McGrath,* 312 Mass. 461 (1942).

However, the decree of the Superior Court permanently enjoined the defendants from using the locus as a refuse dump. It is to be modified to provide that if all or part of the locus is assigned for use as a refuse dump pursuant to G. L. c. 111, § 150A, the injunction is to be dissolved with respect to the area of the locus so assigned. The decree as so modified is affirmed.

*So ordered.*