American Friends Serv. Comm. v. Commissioner of the Dept. of Envtl. Protection.

AMERICAN FRIENDS SERVICE COMMITTEE OF WESTERN
MASSACHUSETTS & others[1] vs. COMMISSIONER OF THE
DEPARTMENT OF ENVIRONMENTAL PROTECTION & others.[2]

No. 89-P-1424.

Hampshire. February 12, 1991. - April 12, 1991.

Present: WARNER, C.J., SMITH, & PORADA, JJ

*Municipal Corporations*, Board of health. *Health, Board of. Department of Environmental Protection. Public Health*, Hazardous substance. *Hazardous Substance.*

General Laws c. 111, § 143, allowing local boards of health to regulate "harmful," "injurious," "dangerous," and odorous trades or employments, provides no authority for the Department of Environmental Protection to review a board's determination that a certain activity conducted by a university (a biological research program) posed no immediate public health danger to the community. [459-461]

CIVIL ACTION commenced in the Superior Court Department on July 21, 1989.

The case was heard by *John F. Murphy, Jr.*, J., on motions for summary judgment.

*Cristobal Bonifaz* for the plaintiffs.

*Frederick D. Augenstern*, Assistant Attorney General, for the Commissioner of the Department of Environmental Protection.

*Alan Seewald*, Assistant Town Counsel, for the board of health of Amherst.

*Terence P. O'Malley*, for the Chancellor of the University of Massachusetts.

[1]Amy Rosebury and Physicians for Social Responsibility, Pioneer Valley.

[2]The Chancellor of the University of Massachusetts and the board of health of Amherst.

SMITH, J. On February 1, 1989, the American Friends Service Committee of Western Massachusetts (AFSC) and others (plaintiffs) appeared before the board of health of Amherst (board) pursuant to G. L. c. 111, § 143.[3] They requested that the board review reports that the University of Massachusetts at Amherst (university) had been conducting biological warfare research. It was the plaintiffs' position that such research posed a threat to "the community and to our world." The plaintiffs requested a public hearing on the matter. The board voted to hold a public hearing on March 2, 1989, in regard to the university's "[a]nthrax research and possible health consequences to Amherst residents." Later, however, the board cancelled the March 2 hearing on the ground that two of its four members were university employees and, therefore, their presence on the board presented a possible conflict of interest. The hearing was rescheduled for April 26, 1989.

At the public hearing on April 26, the plaintiffs and other interested parties testified concerning the alleged potential health risks to Amherst from the university's research. On May 11, 1989, the board voted unanimously "to recommend

---

[3]General Laws c. 111, § 143, as amended through St. 1985, c. 613, §§ 2A, 3, provides, in relevant part:

"No trade or employment which may result in a nuisance or be harmful to the inhabitants, injurious to their estates, dangerous to the public health, or may be attended by noisome and injurious odors shall be established in a city or town except in such a location as may be assigned by the board of health thereof after a public hearing has been held thereon, subject to the provisions of chapter forty A, and such board of health may prohibit the exercise thereof within the limits of the city or town or in places not so assigned, in any event. . . .

"The department of environmental [protection] shall advise, upon request, the board of health of a city or town previous to the assignment of places for the exercise of any trade or employment referred to in this section, and any person, including persons in control of any public land, aggrieved by the action of the board of health in assigning certain places for the exercise of any trade or employment referred to in this section may, within sixty days, appeal from the assignment of the board of health to the department and said department may, after a hearing rescind, modify or amend such assignment. . . ."

to the [board of selectmen] that they found no immediate public health danger to the community by the [a]nthrax research being conducted in [the] laboratory at the [university] . . . ."[4] On May 11, 1989, the plaintiffs petitioned the Department of Environmental Protection (department) for an adjudicatory hearing pursuant to G. L. c. 111, § 143.

On July 14, 1989, the department, through its commissioner, denied the plaintiffs' request for an adjudicatory hearing. He based the denial on the ground that the board had not made a site assignment and, therefore, the department, pursuant to G. L. c. 111, § 143, did not have the authority to hear an appeal from the plaintiffs.

The plaintiffs sought review of the department's decision in the Superior Court. The board, the university, and the department were named as defendants in the action. All of the defendants filed motions to dismiss. After a hearing, a Superior Court judge notified the parties that he intended to treat those motions as motions for summary judgment, and he gave the parties a reasonable opportunity to present additional material.

After reviewing the materials submitted by the parties, the judge ruled that, because the board found that the university's research posed no health risk to the community, it did not make a site assignment. He concluded that, because no site assignment was made, the plaintiffs had no right to appeal to the department for review of the board's action. The judge granted summary judgment in favor of the defendants.

On appeal, the plaintiffs argue that the judge committed error when he ruled that, pursuant to G. L. c. 111, § 143, there can be no site assignment without a finding by the board of possible harm to the public health. They analogize the site assignment provisions of G. L. c. 111, § 150A, the statute for assignment of places for refuse treatment and dis-

---

[4]The board also voted on a regulation proposed by AFSC that would have prohibited any testing, storage, transportation, and disposal of biological materials funded by the United States Army Biological Defense Research Program in Amherst. The board rejected the proposed regulation. The board's action in regard to the proposed regulation is not an issue on appeal.

posal facilities, to those of G. L. c. 111, § 143. We reject the plaintiffs' argument.

Under G. L. c. 111, § 143, once a local board of health finds, among other things, that a trade or occupation may be dangerous to the public health, it may restrict such trade or employment to a specific location within the municipality through a specific site assignment, or the board may ban it entirely. See *Waltham* v. *Mignosa*, 327 Mass. 250, 252 (1951); *Moysenko* v. *Board of Health of N. Andover*, 347 Mass. 305, 308 (1964). If a site assignment is made by the board, any person "aggrieved by the action of the board . . . may . . . appeal from the assignment of the board . . . to the department [of environmental protection]." G. L. c. 111, § 143. Therefore, a prerequisite for an appeal to the department is the assignment of a site location by the board. The statute gives the department no authority to review a board's finding of no possible danger to the public.

It is clear from the language in G. L. c. 111, § 143, that, before ordering a site assignment, the board must, in the first instance, find that a trade or occupation is or may be harmful to the public. In this case, the parties agree and the record reflects that the board found no danger to the public's health from the biological research being conducted at the university. Because there was a finding of no harm to the public, the board made no site assignment. Compare *Commonwealth* v. *Rumford Chem. Works*, 16 Gray 231, 233-234 (1860). As a consequence, the plaintiffs have no right of review before the department under G. L. c. 111, § 143.[5]

---

[5]The plaintiffs argue that the board, in fact, made a site assignment to the university to conduct the challenged research because it allowed the research to continue at that site.

The fact that a board may conduct a public hearing to determine whether a trade or occupation may cause harm to the public, does not, by itself, constitute a site assignment. As we point out in the body of this opinion, there must first be a finding by the board that the trade and occupation is or may be harmful to the public. If it makes such a finding, the record must show specific, clear affirmative action by the board that it then made a site assignment. See *Pendoley* v. *Ferreira*, 345 Mass. 309, 311-312 (1963).

General Laws c. 111, § 150A, does not require a different result. In § 150A, the Legislature has required that the local board of health, or, in some cases, the department, assign sites for refuse treatment and disposal facilities in every case. In § 150A, the Legislature has made the determination that refuse treatment and disposal facilities are in every instance a potential threat to the public. Therefore, the initial determination whether such facilities may be harmful to the public has been removed from the local board of health. In contrast, under § 143, the initial determination whether a particular trade or occupation may be of harm to the public rests in the sound discretion of the local board of health. See *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 553 (1985).

Finally, the plaintiffs' argument that the judge "misinterpreted" the facts presented to him by the parties is unsupported by the record.[6]

*Judgment affirmed.*

---

[6]Because of our decision, we do not reach the issue raised by the university that neither the board nor the department has regulatory authority over the research functions of the university.