BOARD OF HEALTH OF WRENTHAM vs. ROBERT W.
HAGOPIAN, trustee.[1]

No. 93-P-975.

Norfolk. May 19, 1994. - August 18, 1994.

Present: DREBEN, JACOBS, & PORADA, JJ.

*Statute*, Construction. *Department of Environmental Protection. Health,
Board of. Practice, Civil*, Standing. *Words*, "Facility," "Person," "Ag-
grieved person."

Retention of wood material from razed chicken coops on certain property
constituted a "facility" (dumping ground for refuse) under G. L. c.
111, § 150A, which prohibits maintenance of such a facility without
approval of the local board of health. [175-176]
A board of health has standing as an "aggrieved person" under the provi-
sions of G. L. c. 111, § 150A, par. 18, to enforce the provisions of
§ 150A, where any other construction of that provision would not ob-
tain the objective of the statute and would ignore the paramount local
concern in matters of siting of refuse treatment or disposal facilities
[176-178]; in any event, a board of health has standing independent of
§ 150A, to seek injunctive relief under G. L. c. 111, § 187, with re-
spect to matters, including the dumping of refuse, that affect the public
health [178-179].

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 15, 1991.

The case was heard by *Charles M. Grabau*, J., on motions
for summary judgment.

*Robert W. Hagopian* for the defendant.
*George A. Hall, Jr.*, for the plaintiff.

PORADA, J. The plaintiff, the board of health (board),
brought an action in the Superior Court seeking an injunc-
tion requiring the defendant to remove about 900 cubic yards
of debris from his property on the ground that its continued
presence constituted a "facility" (dumping ground for re-

---

[1] Of Redbird Realty Trust.

fuse) that had not received a site approval from the board as required by G. L. c. 111, § 150A.[2] On cross motions for summary judgment, the Superior Court judge ordered the defendant to remove the debris. The defendant appeals on the grounds that summary judgment should not have been granted to the board because his premises do not constitute a "facility" subject to the provisions of G. L. c. 111, § 150A, and because the board lacked standing to bring this action. We affirm.

We summarize the facts, which are not in dispute. The defendant owns a thirty-two-acre tract of land in Wrentham. In 1988, pursuant to a demolition permit issued by the town building inspector, he razed two four-story chicken houses situated on this tract. The permit included a condition that the material from the chicken houses, consisting primarily of wood, be disposed outside the town of Wrentham. The defendant removed 2,000 cubic yards of the razed materials but left approximately 900 cubic yards. The board in 1990 issued an order to remove the remaining debris. When the defendant refused, the board commenced this action. The judge's order requiring the defendant to remove the debris was stayed during the pendency of this appeal.

We address the defendant's claims of error.

1. *Applicability of G. L. c. 111, § 150A.* The defendant maintains that the retention of the wood material from the razed chicken coops on his property does not constitute a "facility" under § 150A, in as much as the debris arises out of an on-site farming operation and he has not added to or allowed others to add to the debris. The term "facility," as defined in § 150A, includes "a dumping ground for refuse or any other works for treating, storing, or disposing of refuse." St. 1987, c. 584, § 16. Refuse is defined therein as "all solid or liquid waste materials, including garbage and rubbish, and

---

[2]General Laws c. 111, § 150A, as appearing in St. 1987, c. 584, § 16, provides in part: "No place in any city or town shall be maintained or operated by any person . . . as a site for a facility . . . . unless . . . such place has been assigned by the board of health of such city or town in accordance with the provisions of this section . . . ."

sludge, but not including sewage." *Ibid.* Under regulations promulgated by the Department of Environmental Protection (department) pursuant to § 150A, a dumping ground is defined as a "place used for the disposal of solid waste from one or more sources which is not established or maintained pursuant to a valid site assignment" and "disposal" is defined as "the final dumping, landfilling or placement of solid waste into or on any land or water." 310 Code Mass. Regs. § 19.006 (1992). Under these regulations, solid waste is further defined as "useless, unwanted or discarded solid . . . material resulting from industrial, commercial, mining, agricultural, municipal or household activities that is abandoned by being disposed . . . or is stored, treated or transferred pending such disposal." *Ibid.*

Giving these broad definitions their plain meaning, see *Commonwealth* v. *Gove*, 366 Mass. 351, 354 (1974), and in light of the public health objectives of the statute (see *infra*), we conclude that the retention of the debris from the razed chicken coops constitutes "a dumping ground for refuse" under G. L. c. 111, § 150A. It makes no difference that the defendant has not added to or allowed others to add to the debris on his property; under this section, as inserted by St. 1987, c. 584, § 16, a person "maintain[s]" a facility when he or she "establish[es], keep[s] or sustain[s] the presence of a facility on a site, whether or not such facility is in operation." Nor does it matter that the discarded material arises out of an on-site farming activity; as noted, that material is included within the definition of "solid waste" in 310 Code Mass. Regs. § 19.006.

2. *Standing.* Section 150A, par. 18,[3] confers jurisdiction upon the Superior Court in equity to enforce the provisions of § 150A "upon petition of the department or any aggrieved person." The defendant claims that the board is not "an aggrieved person." The defendant relies upon the fact

---

[3]The language of current par. 18 of § 150A dates back to the enactment of the statute. See St. 1955, c. 310, § 1. Prior to St. 1987, c. 584, § 16, this language appeared in par. 8; in 1987 it became par. 17, and in 1992 it became par. 18.

that at several places in § 150A (currently paragraphs 2, 12, and 17) the statute explicitly provides that the word "person" includes a political subdivision but does not do so in the paragraph regarding enforcement powers (paragraph 18). We do not deem this conclusive.

Every time "person" is so defined in the statute it refers to an operator of a facility. That being so, we conclude that it was the intent of the Legislature to make it clear that municipalities who operate solid waste facilities are subject to the provisions of § 150A. We do not, however, deem it reflective of the Legislature's intent to exclude municipalities as "aggrieved persons" when those words are considered in the context of the objective which the statute seeks to accomplish. *Prudential Ins. Co.* v. *Boston*, 369 Mass. 542, 546 (1976).

The purpose of the statute is to protect the public health. *American Friends Serv. Comm.* v. *Commissioner of the Dept. of Envtl. Protection*, 30 Mass. App. Ct. 457, 461 (1991). The statute establishes a process by which local boards of health and the department approve and oversee the maintenance and operation of refuse treatment and disposal facilities. Except where the operator is an agency of the Commonwealth, local boards of health must approve or deny site assignment for refuse treatment or disposal facilities in their community. Any person aggrieved by a board's decision in approving a site assignment may appeal to the department. There is no right to appeal in the event a board denies site approval to any facility. Given these circumstances, it is highly unlikely that the Legislature intended to leave the board entirely dependent upon the department or an aggrieved citizen to enforce its decisions when they are ignored. Such a construction would not attain the objective of the statute and would ignore the paramount local concern in these matters. Statutes must be construed as a whole in harmony with common sense and reason. *Beloin* v. *Bullett*, 310 Mass. 206, 210 (1941). As a result, we conclude that in this particular case the words "aggrieved person" include the board of health.

In doing so, we recognize that, as the defendant argues (and, indeed, as we recently said in *Commonwealth* v. *Dowd, ante* 164 [1994]), the word "person" when used in a statute generally does not include municipalities. See G. L. c. 4, § 7, Twenty-third (person when used in a statute "shall include corporations, societies, associations and partnerships"); *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 329 Mass. 243, 250 (1952); *Hansen* v. *Commonwealth*, 344 Mass. 214, 219 (1962); *Commonwealth* v. *Voight*, 28 Mass. App. Ct. 769, 771-773 (1990). Nevertheless, as noted, words in a statute must be construed in the context of the purposes and remedies intended to be advanced by the statute. *Clean Harbors of Braintree, Inc.* v. *Board of Health of Braintree*, 415 Mass. 876, 883 (1993). Compare *Attorney Gen.* v. *Woburn*, 322 Mass. 634, 637 (1948) (municipalities included within definition of person in statute regulating discharge of sewers into river in order to accomplish the public health objective of the statute). Support for such a construction in this case can be found in the implicit recognition by the Supreme Judicial Court and this court that boards of health have standing to seek compliance with § 150A. See *Board of Health of Holbrook* v. *Nelson*, 351 Mass. 17, 19 (1966)(court let stand an injunction obtained by a board of health to enjoin dumping on an unapproved site under § 150A); *Seekonk* v. *Nunes*, 2 Mass. App. Ct. 340, 341-342 (1974)(injunction upheld prohibiting the defendant from operating a refuse dump without site assignment from the board of health). In neither of these cases was the issue of standing addressed.

In any event, independent of the provisions of G. L. c. 111, § 150A, we conclude that the board had standing to seek injunctive relief in the Superior Court. General Laws c. 111, § 187, gives the Superior Court jurisdiction to "enforce orders of . . . boards [of health] relative to public health." In this case the board had issued an order to the defendant to remove the debris. There is no question that the dumping of refuse is a threat to the public health. *American Friends Serv. Comm.* v. *Commissioner of the Dept. of Envtl. Protec-*

*tion*, 30 Mass. App. Ct. at 461. Accordingly, we conclude the board had standing under this provision to seek relief in the Superior Court, and the judge could properly allow summary judgment on the plaintiff's complaint on this ground.

*Judgment affirmed.*