## LEOMINSTER MATERIALS CORPORATION *VS.* TOWN OF LANCASTER.

No. 01-P-187.

Worcester. September 9, 2002. - December 20, 2002.

Present: JACOBS, DOERFER, & COHEN, JJ.

*Board of Health. Nuisance. Municipal Corporations,* Board of health, Nuisance. *Administrative Law,* Judicial review.

The plaintiff in a civil action was not entitled to judicial review under G. L. c. 111, § 147, of an order by the defendant town's board of health (board) not to build or operate a bituminous concrete plant and stone crushing facility during the time that the board would have a request for a site assignment under review, where the plaintiff did not show that its substantial rights had been prejudiced by being required to submit to a deliberative process by which the board could determine where, if at all, the plaintiff's business should be located in the town. [823-826]

CIVIL ACTION commenced in the Superior Court Department on July 14, 1997.

The case was heard by *John S. McCann,* J., on a motion for summary judgment, and a motion for reconsideration was heard by him.

*Roger J. Brunelle* for the plaintiff.

*Carol E. Kamm* for the defendant.

DOERFER, J. Leominster Materials Corporation (LMC) proposed to build a bituminous concrete (asphalt) plant and stone crushing facility on the land it leased in the town of Lancaster (town). The board of health of the town (board), by a letter to LMC dated July 10, 1997, determined that the activity proposed by LMC "may be a 'noisome trade'[1] as that term is

---

[1]"Noisome" derives from Middle English "noiesom" or "noysome," from "noy," harm, short for "anoy," from Old French, from "anoier," to annoy. Usage: *"Noisome, Noxious.* These words have to a great extent been interchanged; but there is a tendency to make a distinction between them, ap-

used in G. L. c. 111, § 143."[2] It further ordered: "Therefore, the Board of Health requires that you submit a site assignment application to the Board prior to constructing or operating the proposed plant. Thereafter, the Board will conduct a public hearing in accordance with G. L. c. 111, [§] 143."

On July 14, 1997, LMC filed a complaint (subsequently amended) in which it claimed a right under G. L. c. 111, § 147, to have a jury annul the determination of the board that the plant "may be a 'noisome trade' " and vacate the board's order prohibiting LMC from operating its plant pending further proceedings. It also sought damages sustained as a result of being "deprived of its right to operate its plant for the period of this appeal" by the order in question.[3] At no time did LMC file an application for a site assignment with the board or take any other action at the administrative level.

The town moved for summary judgment on the ground that LMC's action was premature.[4] A judge of the Superior Court allowed the town's motion on this ground. LMC's motion for reconsideration was denied after a hearing. This appeal followed. We affirm.

*The statutory scheme.* A town, acting through its board of health, has the statutory power to prohibit certain noisome

plying *noxious* to things that inflict evil directly; as, a noxious plant, noxious practices, etc., and *noisome* to things that operate with a remoter influence; as, noisome vapors, a noisome pestilence, etc. Noisome has the additional sense of disgusting. A garden may be free from noxious weeds or animals; but, if recently covered with manure, it may be filled with a noisome smell." Webster's Revised Unabridged Dictionary of the English Language 979 (1913).

Strictly speaking, the board may have employed the term "noisome" more broadly than it is used in G. L. c. 111, § 143, which refers to "noisome and injurious odors." The drift of the board's preliminary determination that the character of the proposed business fell within its jurisdiction under this statute was clear.

[2]The town had held a public hearing on the question.

[3]Monetary damages or costs are provided for under G. L. c. 111, § 150: "If the order is affirmed by the verdict, the board shall recover costs to the use of the town; if it is annulled and the petitioner has not been specially authorized by said board to exercise such trade or employment during the proceedings, he shall recover damages and costs against the town; if it is annulled and the petitioner has been specially authorized as aforesaid, or if it is altered, he shall not recover damages, and the court may render judgment for costs in its discretion."

[4]The other grounds for the motion are immaterial and not discussed here.

activities within its borders or to confine them to places assigned for such purposes. General Laws c. 111, § 143, states in pertinent part:

> "No trade or employment which may result in a nuisance or be harmful to the inhabitants, injurious to their estates, dangerous to the public health, or may be attended by noisome and injurious odors shall be established in a city or town except in such a location as may be assigned by the board of health thereof after a public hearing has been held thereon, subject to the provisions of [G. L. c. 40A] and such board of health may prohibit the exercise thereof within the limits of the city or town or in places not so assigned, in any event. Such assignments shall be entered in the records of the city or town, and may be revoked when the board shall think proper."[5]

The statute has been construed to authorize a town to forbid the exercise of a particular noisome trade anywhere in the town. *Taunton* v. *Taylor*, 116 Mass. 254, 260 (1874).[6] *Revere* v. *Blaustein*, 315 Mass. 93, 95 (1943). A town may also designate a particular place or places where such a trade may be carried on. *Revere* v. *Riceman*, 280 Mass. 76, 82 (1932).

When a town acts under this statute, it is exercising summary powers and its orders must be obeyed[7] pending the outcome of the appeal process specified in G. L. c. 111, § 147. See *Taunton* v. *Taylor, supra.* The character of the trade or activity in ques-

---

[5]Section 143 continues: "The department of environmental protection shall advise, upon request, the board of health of a city or town previous to the assignment of places for the exercise of any trade or employment referred to in this section, and any person, including persons in control of any public land, aggrieved by the action of the board of health in assigning certain places for the exercise of any trade or employment referred to in this section may, within sixty days, appeal from the assignment of the board of health to the department and said department may, after a hearing rescind, modify or amend such assignment."

[6]Construing Gen. Sts. (1860) c. 26, §§ 52, 60, an earlier version of the statute.

[7]General Laws c. 111, § 148, provides: "Such trade or employment shall not be exercised contrary to the order while such proceedings are pending, unless specially authorized by the board; and if so specially authorized all further proceedings by the board shall be stayed while such proceedings are pending. Upon any violation of the order, unless specially authorized as aforesaid, the proceedings shall forthwith be dismissed."

tion, which is the predicate for the order of a board of health, is an issue to be determined at trial. *Ibid.*

*Accrual of a right to bring action under G. L. c. 111, § 147.* By its terms, G. L. c. 111, § 147, gives a right to bring an action to anyone who is "aggrieved by an order made under" § 143.[8] Furthermore, the action must be brought "within three days of service of the order upon [the aggrieved party]."[9] *Ibid.*

LMC claims to be aggrieved because it was ordered,[10] in substance, not to build or operate during the time that the board would have a request for a site assignment under review.[11] The board's order was, however, merely interlocutory and not a final determination that LMC was forbidden to operate anywhere or only at certain places in the town.[12] The order preserved the status quo for a time during which the board could complete its

---

[8]"Whoever is aggrieved by an order made under section one hundred and forty-three . . . may, within three days after service of the order upon him, give written notice of appeal to the board . . . and file a petition for a jury in the superior court in the county where the premises affected are located, and, after notice to the board . . . may have a trial in the same manner as other civil cases are tried by jury. . . ." G. L. c. 111, § 147.

[9]We do not pause to consider whether formal "service" of an order was made since the action was brought within three days of the action complained of.

[10]An order was made in this case. The town ordered LMC not to construct or operate the proposed plant until it had filed an application for a site assignment and such an assignment had been made. The fact that the order was expressed in a sentence that did not use the imperative to describe what LMC shall not do is immaterial. LMC was clearly forbidden by the town to build or operate its plant until a site application had been filed (and approved) for such operation.

[11]It does not matter that there is no specific statutory mechanism for the board to manage an application for a site assignment. The board was free to adopt a reasonable process for considering LMC's request to be assigned a site for its operations. See *Coonamessett Inn* v. *Chief of Falmouth Fire Dept.*, 16 Mass. App. Ct. 632, 635-637 (1983). The town was no doubt operating by analogy to other environmental regulatory schemes which specifically provide for a site assignment process. See, e.g., G. L. c. 111, § 150A (site assignment process for solid waste sites in a town), discussed in *Wood Waste of Boston, Inc.* v. *Board of Health of Everett*, 52 Mass. App. Ct. 330, 333-334 (2001).

[12]The town's reliance on *American Friends Serv. Comm.* v. *Commissioner of the Dept. of Envtl. Protection*, 30 Mass. App. Ct. 457 (1991), is misplaced. That case held only that there is no right of appeal (to the Department of Environmental Protection) of a determination by a board of health that a certain activity is *not* harmful. *Id.* at 460. It did not address the issue in this case: whether a decision of a board of health can be reviewed upon an asser-

consideration[13] of where, if anywhere, LMC could start to operate its business.[14]

The concept of being "aggrieved" to the point of being entitled to judicial review does not extend to interlocutory orders of this kind. Judicial review of administrative action is available only to those who are aggrieved in a "legal sense" and can show that their "substantial rights" have been "prejudiced." *Duato* v. *Commissioner of Pub. Welfare*, 359 Mass. 635, 637-638 (1971). "The rationale against interlocutory review . . . is 'particularly cogent' when a proceeding is still in 'its earliest stage[s],' *Assuncao's Case*, 372 Mass. 6, 9 (1977), and the party seeking declaratory relief has access to additional administrative procedures which may correct or render moot any alleged error." *McKenney* v. *Commission on Judicial Conduct*, 380 Mass. 263, 266 (1980).[15]

The consequence of a finding by the board that the business

tion of jurisdiction by a board that a business may be a noisome trade, but where no final decision has been made to circumscribe or eliminate the locations where the business may operate in the town.

[13]We are not presented with a situation in which the board unreasonably delayed consideration of an applicant's application for assignment of a site. See *Trust Ins. Co.* v. *Commissioner of Ins. (No. 1)*, 48 Mass. App. Ct. 617, 624-625 (2000).

[14]We note from the summary judgment record that LMC had not begun construction or operation of its asphalt and stone crushing business and must have reasonably understood that the character of its proposed operations would attract scrutiny by the board.

[15]In another context, we have said: "An appeal from an interlocutory order is an imposition on the time and resources of the parties and the judiciary because the questions formed as a consequence of the interlocutory order may vanish or change as a result of the administrative agency's action after remand." *Federman* v. *Board of Appeals of Marblehead*, 35 Mass. App. Ct. 727, 729 (1994).

Furthermore, we are not prepared to say that judicial review under this statute is governed by cases decided under the Administrative Procedure Act, G. L. c. 30A, given the unusual grant of a right to a jury trial, the broad powers of a jury in such cases, the right to damages, and the short statute of limitations. But the policy behind the doctrines of exhaustion of administrative remedies and ripeness apply here. See *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. 444, 448-452 (1973); *J. & J. Enterprises, Inc.* v. *Martignetti*, 369 Mass. 535, 539-541 (1976). See also *East Longmeadow* v. *State Advisory Commn.*, 17 Mass. App. Ct. 939, 941 (1983) ("On this record, . . . resort to the courts has been premature").

to be conducted by LMC "may be a 'noisome trade' " is no more than an assertion of jurisdiction by the board over the siting of LMC's operations. LMC has not shown that its substantial rights have been prejudiced by being required to submit to a deliberative process by which the board can determine where, if at all, its business should be located in the town. Until the board considers the matter and forbids or circumscribes the proposed operations, LMC has not been harmed in a legal sense, is not aggrieved, and has no right to judicial review pursuant to G. L. c. 111, § 147. If the board had considered an application for a site assignment and had acted, LMC would then have had an opportunity[16] to persuade a jury that it is not a noisome business or, if it failed in that regard, to persuade the jury to exercise its powers under G. L. c. 111, § 149.[17]

To the extent that LMC was concerned about the short statute of limitations, it could have requested a stay and completed the administrative process. "[W]here damages for past conduct are sought which cannot be awarded by the agency, dismissal may give rise to serious problems in the application of the statute of limitations. In such cases the proper course may be to stay the action instead of dismissing it. *Carnation Co.* v. *Pacific Westbound Conference*, 383 U.S. 213, 222-223 (1966). Cf. *United States* v. *Michigan Nat'l Corp.*, 419 U.S. 1, 5-6 (1974); *Ricci* v.

---

[16]Just prior to oral argument, the town moved to dismiss the appeal on the grounds that the controversy was moot, because (1) LMC's building permit was revoked shortly after this action was commenced (and LMC eventually abandoned its appeal of that action), and (2) LMC subsequently disposed of its interest in the land in question. LMC opposed dismissal for mootness, claiming that it could prove and recover damages if it prevailed in this appeal, even though its original site was no longer available for the proposed business. No conclusion about whether this appeal is moot can be made without resolving the factual and legal issues raised by LMC's claim that it would be entitled to damages if it prevailed in this appeal. Having resolved the appeal on the merits adversely to LMC, there is no need to analyze the mootness issue further.

[17]The statutory authority of the jury is broad: "The verdict may alter, affirm or annul the order, and . . . shall have the authority and effect of a valid order of the board, and may also be enforced by the court in equity." G. L. c. 111, § 149.

*Chicago Mercantile Exch.,* 409 U.S. 289, 302-306 (1973)."
*J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 540
(1976).

*Judgment affirmed.*